FILED
United States Court of Appeals
Tenth Circuit

September 7, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

EMPLOYERS MUTUAL CASUALTY
COMPANY, an Iowa corporation,

      Plaintiff-Appellee/Cross-
      Appellant,

v.

BARTILE ROOFS, INC., a Utah
corporation,

      Defendant-Appellant/Cross-
      Appellee.

Nos. 08-8064 & 08-8068

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 1:07-CV-00182-WFD)**

_____

Jack W. Reed, Peterson Reed Warlaumont & Stout, Salt Lake City, Utah, for
Defendant-Appellant/Cross-Appellee.

Robert C. Evans, Evans & Co., Durango, Colorado, for Plaintiff-Appellee/Cross-
Appellant.

_____

Before **MURPHY** and **HOLMES**, Circuit Judges, and **POLLAK**, District Judge.[*]

_____

**HOLMES**, Circuit Judge.

_____

[*]     The Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

This appeal arises out of an insurance dispute involving the construction of a luxury hotel in the vicinity of Jackson Hole, Wyoming. Employers Mutual Casualty Co. ("EMC") brought a diversity action in federal district court, pursuant to 28 U.S.C. §§ 1332 and 2201, requesting a declaratory judgment as to its duty to defend or indemnify Bartile Roofs, Inc. ("Bartile"), against claims pending in California state court. EMC also sought to recoup the costs it had incurred in defending Bartile in the underlying state-court action. After denying Bartile's motion to dismiss and motion to transfer venue, the district court granted in part, and denied in part, EMC's motion for summary judgment. Specifically, the district court concluded that EMC owed no duty to defend Bartile, but it refused to allow EMC to recoup its defense costs.

On appeal, Bartile challenges the district court's order denying its motion to dismiss and motion to transfer venue, as well as the choice-of-law determination in the summary judgment order. EMC cross-appeals the order denying its motion for summary judgment with respect to the recoupment of defense costs. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's orders.

## BACKGROUND

EMC is an insurance company organized under the laws of Iowa and has its principal place of business in Des Moines, Iowa. Bartile is organized under the laws of Utah and has its principal place of business in Centerville, Utah. Between

-2-

2001 and 2003, EMC issued three commercial general liability ("CGL") insurance

policies to Bartile, providing coverage in the aggregate from November 1, 2001,

to November 1, 2004. Although Bartile renewed the CGL policy each year, the

policies provided liability insurance via a standard coverage form and contained

the same language in all relevant terms, conditions, and definitions.[1] These CGL

policies were negotiated in Utah, underwritten in Colorado, and executed in Utah.

In mid-2001, FS Jackson Hole Development Company, LLC (the "Owner"),

hired Jacobsen Construction Company ("Jacobsen") to construct the Four Seasons

Resort Jackson Hole in Teton Village, Wyoming. As the general contractor,

Jacobsen subcontracted the roofing work for this luxury hotel to Bartile. Bartile

began work on the construction project in November 2002 and substantially

---

[1] The CGL policies applied to "property damage" that "is caused by an 'occurrence,'" that "t[ook] place in the 'coverage territory,'" and that "occur[red] during the policy period." Aplt. App. at 727, 740, 785, 850. Under the CGL policies, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 738, 798, 863. The CGL policies also contained the following "duty-to-defend" clause:

> We will pay those sums that the insured becomes legally
> obligated to pay as damages because of . . . 'property damage'
> to which this insurance applies. We will have the right and
> duty to defend the insured against any 'suit' seeking those
> damages. However, we will have no duty to defend the
> insured against any 'suit' seeking damages for . . . 'property
> damage' to which this insurance does not apply.

*Id.* at 727, 740, 785, 850. A "suit" is "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged." *Id.* at 739, 799, 864.

completed its activities in February 2004. Bartile finished all of its work on the hotel in October 2005.

On March 11, 2004, Jacobsen filed a civil action against the Owner in California state court. The Owner countered with a cross-complaint against Jacobsen, alleging various defects in the construction. On October 4, 2004, Jacobsen filed a cross-complaint against Bartile and other subcontractors.[2] The project architect also filed a cross-complaint against Bartile on April 27, 2006, which was amended on July 24, 2007, alleging essentially the same claims as Jacobsen.[3]

On November 22, 2004, Bartile requested defense and indemnification against these claims, pursuant to the relevant CGL policies. On October 25, 2005, EMC agreed to provide a defense. However, EMC reserved its right to investigate the claims further and "to deny coverage for part or all of the claimed damage." Aplt. App. at 691; *accord id.* at 692; Aplee. Opening Br. at 4. On August 17, 2007, EMC issued a second letter to Bartile in which it announced that

---

[2]     In a Third Amended Cross-Complaint, filed on September 22, 2006, Jacobsen alleged claims against Bartile and other subcontractors for (1) implied and equitable indemnity; (2) contribution; (3) breach of contract; (4) express indemnity; (5) breach of contract (failure to defend); (6) breach of implied warranties; (7) breach of express warranties; (8) declaratory relief regarding the duty to defend; and (9) declaratory relief regarding the duty to indemnify.

[3]     On August 21, 2007, St. Paul Fire & Marine Insurance Co., Jacobsen's surety, filed a separate complaint against Bartile. Nothing in the record indicates that Bartile demanded or received a defense against the surety's claims.

the claims "[we]re not covered by [the] policy." Aplt. App. at 1272. Although

EMC stated that it would "continue to defend Bartile in this litigation," EMC

reserved the right "to enforce any rights it may have to recoup defense costs from

Bartile should it be determined that EMC had no duty to defend Bartile in this

litigation." *Id.*

On August 20, 2007, EMC filed a declaratory judgment action in the U.S.

District Court for the District of Wyoming. EMC argued that it was not obligated

to defend or indemnify Bartile for the claims and damages asserted in the

underlying state-court action. EMC also sought to recoup the costs it had

incurred in defending Bartile against those claims. On December 21, 2007, EMC

moved for summary judgment. On the same day, Bartile moved to dismiss the

federal claims for lack of personal jurisdiction and improper venue and, in the

alternative, asked the district court to transfer the action to the U.S. District Court

for the District of Utah.

On March 4, 2008, the district court denied the motion to dismiss and the

motion to transfer venue. On August 6, 2008, the district court granted the

motion for summary judgment in part and denied it in part. Although the district

court held that the underlying state-court action did not trigger EMC's duty to

defend Bartile, it denied EMC's request for recoupment of the defense costs.

Bartile now appeals the district court's orders denying its motion to dismiss

and motion to transfer venue. Bartile also challenges the district court's grant of

partial summary judgment in favor of EMC.  EMC cross-appeals the order

denying its motion for summary judgment on the recoupment of defense costs.

## DISCUSSION

On appeal, Bartile contends that the district court (1) erred in exercising

personal jurisdiction in this declaratory-judgment action; (2) erred in denying

Bartile's motion to dismiss this action for improper venue; (3) abused its

discretion in declining to transfer venue to the District of Utah; and (4) erred in

applying Wyoming law to the analysis of EMC's duty to defend.[4]  On cross-

---

[4]        Bartile also requested leave to supplement the record on appeal with the "Fourth Amended Cross-Complaint of Jacobsen Construction Company, Inc. Against Bartile Roofs, Inc.," which was filed in the underlying state-court action. In general, Federal Rule of Appellate Procedure 10 limits the record to materials before the district court.  Fed. R. App. P. 10(a); *see United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000).  Although Rule 10(e) authorizes the supplementation of the record when (1) a dispute exists regarding "whether the record truly discloses what occurred in the district court"; or (2) "anything material . . . is omitted from or misstated in the record by error or accident," Fed. R. App. P. 10(e)(1)–(2), this rule "'does not grant a license to build a new record.'"  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 n.11 (10th Cir. 2010) (quoting *Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1177 n.2 (10th Cir. 2000)).  In this action, Rule 10(e) does not permit the supplementation of the record because the Fourth Amended Cross-Complaint was not before the district court and was not omitted from the record by error or accident.

We also decline to exercise our "inherent equitable authority" to supplement the record on appeal to include the Fourth Amended Cross-Complaint. *See Kennedy*, 225 F.3d at 1191 (internal quotation marks omitted).  Although we have relied on this inherent authority in certain circumstances, *see, e.g.*, *United States v. Balderama-Iribe*, 490 F.3d 1199, 1202 n.4 (10th Cir. 2007) (exercising inherent authority to add a letter from the prosecutor that corrected his misstatement at the pretrial hearing and noting that the defendant had not objected

(continued...)

appeal, EMC contests the denial of its request to recoup the costs of defending Bartile in the underlying state-court action.

## I.    PERSONAL JURISDICTION

"We review *de novo* the district court's decision to exercise personal jurisdiction over [Bartile]." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would

------

[4](...continued)
in the district court), the exercise of this inherent authority is a "rare exception to Rule 10(e)." *Kennedy*, 225 F.3d at 1192.

In this action, Bartile relies on cases in which an appellate court permitted the supplementation of the record to correct misrepresentations by the prevailing party, to demonstrate the mootness of the controversy, or to raise an issue for the first time on appeal. *See Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1309 (10th Cir. 2000) (mootness); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir. 1993) (misrepresentation); *United States v. Aulet*, 618 F.2d 182, 185–87 (2d Cir. 1980) (new issue). Unlike those cases, however, Bartile never alleges misrepresentation or mootness and does not raise an issue for the first time on appeal. Bartile also fails to satisfy any of the factors recognized by other courts. *See* 16A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, *Federal Practice and Procedure* § 3956.4, at 677–80 (4th ed. 2008) (compiling a list of reasons for granting permission to supplement the record on appeal); 20 James Wm. Moore et al., *Moore's Federal Practice* § 310.10[5] (3d ed. 2010) (same).

support jurisdiction over the defendant." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (internal quotation marks omitted). "All factual disputes are resolved in favor of the plaintiff[] when determining the sufficiency of this showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009). "[T]o defeat a prima facie showing of jurisdiction, the defendant must demonstrate that the presence of some other considerations would render jurisdiction unreasonable." *TH Agric. & Nutrition*, 488 F.3d at 1286 (internal quotation marks omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Id.* at 1286–87 (internal quotation marks omitted). The Wyoming long-arm statute authorizes jurisdiction to the full extent of the federal constitution. Wyo. Stat. Ann. § 5-1-107(a). Thus, we need not conduct a statutory analysis apart from the due process analysis. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).

The due process analysis consists of two steps. First, we consider "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This minimum-

-8-

contacts standard may be satisfied by showing general or specific jurisdiction. *See id.* Because the parties agree that Bartile is not subject to "general" personal jurisdiction,[5] we proceed to the issue of "specific" personal jurisdiction. *Pro Axess*, 428 F.3d at 1276. Second, if the defendant has minimum contacts within the forum state, we determine "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Calif.*, 480 U.S. 102, 105 (1987) (plurality opinion)). This analysis is fact specific. *TH Agric. & Nutrition*, 488 F.3d at 1287, 1292.

## A.  Minimum Contacts

Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (emphasis omitted) (internal quotation marks omitted); and (2) "'the litigation results from alleged injuries that arise out of or relate to those activities,'" *TH Agric. & Nutrition*, 488 F.3d at 1287 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

---

[5]  "[A] court may maintain general jurisdiction over a nonresident defendant, based on the defendant's continuous and systematic general business contacts with the forum state." *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (internal quotation marks omitted).

### 1. Purposeful Availment

"Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *OMI Holdings*, 149 F.3d at 1092 (internal quotation marks omitted). "[W]e must examine the quantity *and* quality of Defendant's contacts with [the forum state] . . . ." *Id.* (second emphasis omitted). The purpose of this requirement is to "ensure[] that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *AST Sports Sci.*, 514 F.3d at 1058 (internal quotation marks omitted); *accord Rusakiewicz*, 556 F.3d at 1101.

In this action, Bartile purposefully availed itself of the privilege of conducting business in Wyoming. Bartile negotiated and entered into a subcontract work order with Jacobsen to perform roofing work for the construction of a luxury hotel in Jackson Hole, Wyoming. Bartile subsequently worked on this construction project for almost three years. Thus, these contacts were not "random, fortuitous, or attenuated." *AST Sports Sci.*, 514 F.3d at 1058 (internal quotation marks omitted).

### 2. Arise Out of or Relate to Forum Activities

We also must "determine whether a nexus exists between the Defendant['s] forum-related contacts and the Plaintiff's cause of action." *TH Agric. & Nutrition*, 488 F.3d at 1291 (brackets omitted) (internal quotation marks omitted).

When analyzing this issue, courts generally follow one of three approaches: (1) proximate cause; (2) "but-for" causation; or (3) substantial connection.[6] *See Dudnikov*, 514 F.3d at 1078–80. Although we have rejected the substantial-connection approach outright, *id.* at 1078, we have not expressly "pick[ed] sides" (i.e., exclusively made an election) between the proximate-cause and the but-for-causation approaches, *id.* at 1079.[7] Proximate cause is the most restrictive approach and requires courts to analyze "whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id.* at 1078 (internal quotation marks omitted); *see O'Connor*, 496 F.3d at 318–19 (noting that the cause of action must arise out of the defendant's in-forum conduct). "But-for" causation is less restrictive and supports the exercise of personal jurisdiction based on "any event in the causal chain leading to the plaintiff's injury." *Dudnikov*, 514 F.3d at 1078.

We also need not elect in this case between the proximate-cause and but-

---

[6] The "substantial connection" approach is the least restrictive of the three approaches and merely requires "the tie between the defendant's contacts and the plaintiff's claim [to be] close enough to make jurisdiction fair and reasonable." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318–20 (3d Cir. 2007).

[7] In contract actions, we have consistently applied the more-restrictive proximate-cause approach. *See, e.g.*, *TH Agric. & Nutrition*, 488 F.3d at 1292 ("THAN's claims arise out of the Insurer's contact with [the forum state]"); *Pro Axess*, 428 F.3d at 1279 ("Pro Axess's breach of contract claims arose from . . . Sporoptic's contacts with [the forum state]."); *OMI Holdings*, 149 F.3d at 1095 ("Plaintiff's claim clearly arose out of Defendants' forum-related activity.").

for-causation approaches. Under either, the declaratory judgment action "results from alleged injuries that arise out of or relate to" Bartile's contacts with Wyoming. The proximate-cause approach is satisfied because Bartile's allegedly negligent work is relevant to the merits of the declaratory judgment action. In the declaratory judgment action, EMC seeks to avoid having to defend or indemnify Bartile for injuries arising out of the allegedly negligent work on the luxury hotel in Wyoming. The but-for causation approach is satisfied because Bartile's allegedly negligent work was an event in the causal chain leading to the request for a declaratory judgment.

**B.      Traditional Notions of Fair Play and Substantial Justice**

If the defendant has minimum contacts with the forum state, "we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *AST Sports Sci.*, 514 F.3d at 1061 (internal quotation marks omitted). We must analyze "whether a district court's exercise of personal jurisdiction . . . is reasonable in light of the circumstances surrounding the case." *Id.* (internal quotation marks omitted). The defendant bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks omitted).

This reasonableness analysis requires the weighing of five factors:

(1) the burden on the defendant, (2) the forum state's interest

in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Pro Axess*, 428 F.3d at 1279–80 (internal quotation marks omitted). "In assessing the reasonableness of jurisdiction, we also take into account the strength of a defendant's minimum contacts." *TH Agric. & Nutrition*, 488 F.3d at 1292. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (brackets omitted) (internal quotation marks omitted). Based upon our consideration of each factor, we conclude that the exercise of personal jurisdiction would be reasonable.

### 1. Burden on Defendant of Litigating in the Forum

"The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *AST Sports Sci.*, 514 F.3d at 1061 (brackets omitted) (internal quotation marks omitted). But "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (internal quotation marks omitted). This factor weighs strongly in favor of EMC because the burden is "relatively slight" for Bartile, a Utah resident, to litigate in the adjacent state of

-13-

Wyoming. *See Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618, 626 (10th Cir. 1988). Bartile also has not identified any burden that would arise from defending the action in Wyoming.[8] *Dudnikov*, 514 F.3d at 1081 (noting that "one side must bear the inconvenience of litigating on the road" and "defendants have not indicated that their defense of this case would be hindered by the territorial limits on the [forum's] power to subpoena relevant witnesses, or indeed hampered in any other significant way" (internal quotation marks omitted)).

### 2. Forum State's Interest in Adjudicating the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *AST Sports Sci.*, 514 F.3d at 1062 (internal quotation marks omitted). "Although less compelling, a state may also have an interest in adjudicating a dispute between two non-residents where the defendant's conduct affects forum residents." *OMI Holdings*, 149 F.3d at 1096. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws."

---

[8] In the transfer of venue section of the opening brief, Bartile argues that "[l]itigating in Wyoming is more expensive . . . than litigating in Salt Lake City." Aplt. Opening Br. at 20. Because Bartile neglected to raise this argument in the personal-jurisdiction section of its opening brief, it has waived this argument on appeal. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *see* Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's opening brief to identify "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

*Pro Axess*, 428 F.3d at 1280 (internal quotation marks omitted).

This factor weighs in favor of Bartile because Wyoming has only a tenuous interest in adjudicating this action. Although Wyoming law ultimately applies to this action, *see* discussion *infra* Part III; *Pro Axess*, 428 F.3d at 1280, neither Bartile nor EMC is a Wyoming resident. *AST Sports Sci.*, 514 F.3d at 1062. The dispute also has minimal impact on Wyoming residents because nothing in the record indicates that Bartile or EMC employs any Wyoming residents or that a Wyoming resident has attempted to recover from EMC for Bartile's conduct. *OMI Holdings*, 149 F.3d at 1096. Even though EMC claims that Wyoming has an interest in adjudicating the action because the construction of the hotel has an economic impact on the tourism industry, that interest is too speculative and remote to support personal jurisdiction in this action. Finally, the CGL policies were negotiated, underwritten, and executed outside of Wyoming.

### 3. Plaintiff's Interest in Convenient and Effective Relief

"This factor hinges on whether the plaintiff may receive convenient and effective relief in another forum." *AST Sports Sci.*, 514 F.3d at 1062 (brackets omitted) (internal quotation marks omitted). When applying this factor, courts note that it "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing [it] to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *TH Agric. & Nutrition*, 488 F.3d at 1294

(internal quotation marks omitted); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004).

This factor also weighs in favor of Bartile. Although EMC claims that it "has an interest in having this litigation resolved quickly and efficiently," Aplee. Opening Br. at 11, nothing in the record suggests that EMC's "chances of recovery will be greatly diminished by forcing [it] to litigate in another forum." *TH Agric. & Nutrition*, 488 F.3d at 1294 (internal quotation marks omitted). The application of Utah law would not prejudice EMC because Wyoming and Utah law are the same in every material respect regarding this declaratory judgment action. *See* discussion *infra* Part III; *see also OMI Holdings*, 149 F.3d at 1097 (finding that this factor weighs in favor of the defendant because the same law governs the terms of the insurance policies, regardless of the forum).

EMC also would not be foreclosed from pursuing the declaratory judgment action because of the burden of litigating in Utah. The record contains only vague assertions regarding the location of potential witnesses. Even if these assertions were concrete enough to demonstrate a burden on EMC, they would not indicate that the burden was overwhelming. *TH Agric. & Nutrition*, 488 F.3d at 1295–96.

### 4. Interstate Judicial System's Interest in Efficiency

"This factor asks whether the forum state is the most efficient place to litigate the dispute." *AST Sports Sci.*, 514 F.3d at 1062 (internal quotation marks

omitted). "Key to this inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *TH Agric. & Nutrition*, 488 F.3d at 1296 (internal quotation marks omitted).

This factor slightly favors EMC because the record is insufficient to determine whether Wyoming or Utah is "the most efficient place to litigate the dispute." *AST Sports Sci.*, 514 F.3d at 1062 (internal quotation marks omitted). For example, neither party has identified any potential witnesses to the declaratory judgment action. Although the CGL policies were negotiated and executed in Utah, *see OMI Holdings*, 149 F.3d at 1097, Bartile performed the allegedly negligent work on the luxury hotel in Wyoming, *see TH Agric. & Nutrition*, 488 F.3d at 1296; *Benton*, 375 F.3d at 1080. Furthermore, as noted *infra* Part III, Utah and Wyoming law are not in actual conflict regarding the issues relevant to this action. *OMI Holdings*, 149 F.3d at 1097.

Finally, personal jurisdiction in Wyoming avoids some piecemeal litigation. Although the underlying state-court action was filed in California, the District of Wyoming has ruled on an insurance claim arising from the same construction project. *See Great Divide Ins. Co. v. Bitterroot Timberframes of Wyo., LLC*, No. 06-CV-020-WCB, 2006 U.S. Dist. LEXIS 94826 (D. Wyo. Oct. 20, 2006). Therefore, irrespective of whether the District of Wyoming is actually the most efficient place to litigate this dispute, we conclude that it has some litigation-

-17-

related advantages over the District of Utah as a forum, and this factor slightly favors EMC.

### 5. States' Interest in Substantive Social Policies

This factor "focuses on whether the exercise of personal jurisdiction . . . affects the substantive social policy interests of other states." *AST Sports Sci.*, 514 F.3d at 1062 (internal quotation marks omitted). This factor weighs in favor of EMC because Bartile has not identified how the litigation of this action in Utah would advance any fundamental substantive social policy. Even though Bartile is a Utah corporation, the exercise of personal jurisdiction would not interfere with Utah's sovereign interest in interpreting its laws because Wyoming law applies to this action. *See* discussion *infra* Part III.

In sum, the district court properly exercised personal jurisdiction over Bartile. Bartile had minimum contacts with Wyoming. Although certain traditional notions of fair play and substantial justice favored Bartile, it failed to establish a "compelling case" that personal jurisdiction would be unreasonable.

## II. VENUE

Bartile also contends that the district court (1) erred in denying the motion to dismiss for improper venue, and (2) abused its discretion in refusing to transfer the action to the U.S. District Court for the District of Utah.

### A. Improper Venue

We review de novo the district court's decision not to dismiss an action for improper venue.[9]  *See Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 (10th Cir.

---

[9]      As an initial matter, we consider *sua sponte* our jurisdiction to consider a challenge to the district court's denial of the motion to dismiss for improper venue.  A notice of appeal must "designate the judgment, order, or part thereof being appealed."  Fed. R. App. P. 3(c)(1)(B).  "Our appellate review is limited to final judgments or parts thereof that are designated in the notice of appeal. . . . [O]ur jurisdiction does not extend to other matters of the judgment that [appellant] may [subsequently] wish to appeal."  *Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 444 (10th Cir. 1990) (citations omitted).

In the notice of appeal, Bartile "appeals the Court's Order Denying Bartile's Motion to Dismiss for Lack of Jurisdiction and Motion for Change of Venue entered on March 4, 2008."  Aplt. App. at 1675.  Although the notice of appeal specifically mentioned two of the three issues addressed in the district court's order, *viz.*, personal jurisdiction and transfer of venue, Bartile neglected to raise the denial of its motion to dismiss for improper venue.  Thus, Bartile failed to comply with the requirements of Rule 3(c) with respect to the improper-venue issue.  *See United States v. Morales*, 108 F.3d 1213, 1222 (10th Cir. 1997); *Cunico*, 917 F.2d at 444.

Even though Rule 3(c) is jurisdictional, "the requirements of the rules of procedure should be liberally construed and . . . mere technicalities should not stand in the way of consideration of a case on its merits."  *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (internal quotation marks omitted).  "We have recognized that a docketing statement or other documents filed within the period allotted for filing a notice of appeal may cure defects in the notice of appeal."  *Ayala v. United States*, 980 F.2d 1342, 1344 (10th Cir. 1992).  Furthermore, we have liberally construed notices of appeal to raise an issue when the appellant manifested an intent to appeal the issue and did not mislead or prejudice the opposing party.  *See Morales*, 108 F.3d at 1222–23; *see also* 20 Moore, *supra* note 4, § 303.21[3][c][v] ("If the appellant mistakenly designated only part of a judgment . . . in the notice of appeal, the appellate court may nevertheless review other related parts, if the intent to appeal the related matters is clear from the record as a whole, and the opposing party is not prejudiced.").  *But see* 16A Wright, Miller, Cooper & Struve, *supra* note 4, § 3949.4, at 109–10 ("[A] notice of appeal that specifies only part of a final judgment . . . will not suffice to appeal other parts of the judgment . . . , especially if those omitted are

(continued...)

2006) (noting that "the question of whether a litigant has brought an action in the proper court is a question of law"); *cf. Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998) ("The district court's determination of where the action may be brought involves an interpretation of the venue statute and is, therefore, a question of law subject to de novo review."). The district court held that "[v]enue is proper in Wyoming," pursuant to § 1391(a)(2), because "[t]he events giving rise to this litigation all concern [Bartile's] actions in [Wyoming]." Aplt. App. at 1651. For the following reasons, we agree.

In a diversity action, venue lies in

> (1) a judicial district where any defendant resides, . . . (2) a judicial district in which a substantial part of the events or

---

[9](...continued)
conceptually distinct from those mentioned.").

In this action, Bartile manifested an intent to appeal the district court's denial of its motion to dismiss for improper venue. On September 19, 2008, Bartile filed a docketing statement in which it unambiguously stated its intent to challenge whether "the trial court correctly rule[d] that the case should not be dismissed for improper venue." Docketing Statement at 5, *Employer's Mut. Cas. Co. v. Bartile Roofs, Inc.*, No. 08-8064 (10th Cir. Sept. 19, 2008); *see Morales*, 108 F.3d at 1223. This docketing statement was timely filed under Federal Rule of Appellate Procedure 4(a). Even though Bartile filed the docketing statement more than thirty days after the issuance of the summary judgment order on August 6, 2008, the notice of appeal was not due until February 2, 2009, because the district court had neglected to file a separate judgment in accordance with Federal Rule of Civil Procedure 58(a)(1). Fed. R. App. P. 4(a)(1), (a)(7)(A) (providing that a notice of appeal is not due for 180 days after the entry of the order on the civil docket if the district court neglected to file a separate judgment). Finally, EMC was not misled or prejudiced because Bartile had served it with a copy of the docketing statement. *See* Docketing Statement at 9, *Employer's Mut. Cas. Co. v. Bartile Roofs, Inc.*, No. 08-8064 (10th Cir. Sept. 19, 2008).

omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)(1)–(3).  The only possible ground for venue at issue here is under § 1391(a)(2).[10]  Under that provision, venue is not limited to the district with the *most* substantial events or omissions.  *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998); *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994); *cf. Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1479 (10th Cir. 1989) (noting, under a prior version of 28 U.S.C. § 1391, that venue was proper in multiple districts).  Section 1391(a)(2) instead "contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts."

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) (internal quotation

---

[10]    Venue is not proper in the District of Wyoming under either § 1391(a)(1) or (a)(3).  Under § 1391(a)(1), venue is not proper because Bartile is not a resident of Wyoming.  Although we will deem a corporate defendant to be a "resident" for purposes of § 1391(a)(1) when the defendant "is subject to personal jurisdiction at the time the action is commenced," 28 U.S.C. § 1391(c), Bartile claims to have ceased all contact with Wyoming approximately two years prior to the filing of this action.  *See Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1060 (D. Kan. 2006); *Dyco Petroleum Corp. v. Mesa Operating Co.*, 935 F. Supp. 1193, 1195–96 (N.D. Okla. 1996).  Under § 1391(a)(3), venue is not proper because EMC could have brought the declaratory judgment action in the District of Utah.  *See Algodonera de las Cabezas, S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005) ("[V]enue may be predicated on § 1391(a)(3) only when neither § 1391(a)(1) or (2) are satisfied.").

marks omitted).

We conduct a two-part analysis when reviewing challenges to venue under § 1391(a)(2).  First, we examine the nature of the plaintiff's claims and the acts or omissions underlying those claims.  *See id.* at 357; *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).  In this action, EMC requested a declaratory judgment that the CGL policies imposed no duty to defend or indemnify Bartile against claims pending in California state court.  This declaratory judgment action arose from a series of acts and omissions that occurred in Utah, Colorado, and Wyoming.  For example, the record suggests that the CGL policies were negotiated in Utah, underwritten in Colorado, and executed in Utah.  Bartile performed allegedly negligent roofing work on the luxury hotel in Wyoming.  Bartile also filed a claim through a Utah-based insurance broker to demand that EMC defend it from the state-court action and indemnify it from any adverse judgments.  Although EMC sent a letter from Colorado announcing that the CGL policies did not cover the alleged damages, it agreed to provide a defense subject to a reservation of its right to recoup its defense costs.

Second, we determine whether substantial "events material to those claims occurred" in the forum district.[11]  *Gulf Ins.*, 417 F.3d at 357; *accord Jenkins Brick*

[11]    When applying the substantiality analysis, courts have disagreed over whether to focus solely on the activities of the defendant or to consider the

(continued...)

*Co.*, 321 F.3d at 1372; *Cottman*, 36 F.3d at 295–96. The substantiality

requirement is satisfied upon a showing of "acts and omissions that have a close

nexus" to the alleged claims. *Jenkins Brick Co.*, 321 F.3d at 1372; *Uffner*, 244

F.3d at 42 ("We look . . . not to a single triggering event prompting the action,

but to the entire sequence of events underlying the claim."); *see also* 17 James

Wm. Moore et al., *Moore's Federal Practice* § 110.04[1] (3d ed. 2010) (stating

that, when engaging in the substantiality analysis, courts "ought not focus solely

on the matters that gave rise to the filing of the action, but rather should look at

the entire progression of the underlying claim").

In this action, the substantial events include Bartile's allegedly negligent

work on the luxury hotel. Courts have held that the alleged damages or loss

under an insurance policy may constitute a substantial event for purposes of the

venue analysis. *See Uffner*, 244 F.3d at 43 ("[I]n a suit against an insurance

---

[11](...continued)
activities of the plaintiff as well. *Compare, e.g.*, *Jenkins Brick Co.*, 321 F.3d at 1371–72 (relying solely on the relevant activities of the defendant) *and Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (noting that "by referring to events and omissions giving rise to the claim, Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff" (internal quotation marks omitted)), *with Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 n.6 (1st Cir. 2001) (declining to limit the review of the events or omissions to the actions of the defendant); *Bramlet*, 141 F.3d at 263-64 (same); *and Cottman*, 36 F.3d at 294 (same). Although we have weighed in on this circuit split in a non-binding order and judgment, *Goff v. Hackett Stone Co.*, No. 98-7137, 1999 WL 397409, at *1 (June 17, 1999), we need not definitively answer this question at this time. Even restricting our focus to Bartile's activities, we conclude that the substantial events material to the claims occurred in the District of Wyoming.

company to recover for losses . . . , the jurisdiction where that loss occurred is substantial for venue purposes." (internal quotation marks omitted)); *see also Gulf Ins.*, 417 F.3d at 358 (observing, in dicta, that the original injury was a substantial event for purposes of the venue analysis when an insurance company sought a declaratory judgment that the injury was not covered by the insurance policy). Although Bartile contends that the location of the allegedly negligent work is irrelevant to the interpretation of the CGL policies, *Uffner*, 244 F.3d at 43, this work is still part of the "entire sequence of events underlying the claim" because it forms the basis of Bartile's request for a defense and indemnification, *id.* at 42. Thus, venue is proper under 28 U.S.C. § 1391(a)(2).

## B.    Transfer of Venue

We review the district court's decision not to transfer this action to the District of Utah for a clear abuse of discretion. *Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1121 (10th Cir. 2003). Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought."[12]  In considering a motion to transfer under § 1404(a), we weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of

---

[12]     The parties do not dispute that the District of Utah is a district where this action "might have been brought."

compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks omitted).  The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (internal quotation marks omitted).  "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."  *Id.* at 966.

### 1.    Plaintiff's Choice of Forum

The plaintiff's choice of forum weighs against transfer.  "[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed."[13]  *Id.* at 965 (internal quotation marks omitted).  The

---

[13]    For more than five decades, we have required the movant to demonstrate that the balance of factors "strongly favors" a transfer of venue under § 1404(a).  *See, e.g.*, *Scheidt*, 956 F.2d at 965; *Wm. A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972); *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967); *Hous. Fearless Corp. v. Teter*, 318 F.2d 822, 827–28 (10th Cir. 1963); *Chi., Rock Island & Pac. R.R. Co. v. Hugh Breeding, Inc.*, 232 F.2d 584, 587 (10th Cir. 1956); *Headrick v. Atchison, Topeka & Santa Fe Ry. Co.*, 182 F.2d 305, 310 (10th Cir. 1950).  Although we apply this

(continued...)

plaintiff's choice of forum receives less deference, however, if the plaintiff does

not reside in the district. *See Four Corners Nephrology Assocs., P.C. v. Mercy

Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006); *see also Wm.

A. Smith Contracting Co.*, 467 F.2d at 664 (examining the location of the

---

[13](...continued)
standard to motions to transfer venue under § 1404(a), we borrowed the standard verbatim from a case applying the common-law doctrine of *forum non conveniens*. *Headrick*, 182 F.2d at 310 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The Fifth Circuit has suggested that this standard is too stringent. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312–15 (5th Cir. 2008). In *Volkswagen*, the Fifth Circuit concluded that the *forum non conveniens* dismissal standard "give[s] inordinate weight to the plaintiffs' choice of venue," *id.* at 314–15, because § 1404(a) "'permit[s] courts to grant transfers upon a lesser showing of inconvenience,'" *id.* at 313 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)); *see* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3848, at 161 (3d ed. 2007) (noting that courts frequently cite the strongly favor language "without recognizing that the original source of this theory was in connection with the forum non conveniens doctrine and that application of this standard to Section 1404(a) is doubtful"). The Fifth Circuit instead requires a movant to "demonstrate[] that the transferee venue is *clearly* more convenient." *Volkswagen*, 545 F.3d at 315 (emphasis added).

There actually may be less disharmony between our approach and that of the Fifth Circuit than a first-blush examination might suggest. We have repeatedly acknowledged that § 1404(a) "was intended to revise . . . the common law" and that "[c]ourts therefore enjoy greater discretion to transfer a case pursuant to § 1404(a) than to dismiss the action based upon *forum non conveniens*." *Chrysler Credit*, 928 F.2d at 1515; *accord Chi., Rock Island & Pac. R.R. Co.*, 232 F.2d at 587 ("By the adoption of [§ 1404(a)] Congress intended to broaden the old doctrine of forum non conveniens . . . ."); *Headrick*, 182 F.2d at 310 (agreeing that "courts may properly utilize the doctrine more freely"). Furthermore, our standard appears to be consistent with the Fifth Circuit's holding in *Volkswagen* because we honor the plaintiff's choice of forum "unless the balance in the defendant's favor is shown by *clear and convincing* evidence." *Headrick*, 182 F.2d at 310 (emphasis added).

plaintiff's principal place of business). Courts also accord little weight to a plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993).

This factor weighs against transferring the action. Although EMC is an Iowa corporation that does not reside in Wyoming for purposes of § 1404(a), "the facts giving rise to the lawsuit have [a] material relation or significant connection to" Wyoming. *Id.* These facts include Bartile's allegedly negligent roofing work on the luxury hotel in Wyoming. Although Bartile observes that several district courts have determined that the locus of operative facts in a declaratory action involving insurance coverage is either the site of policy's execution or the site of the decision to deny coverage, *see, e.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N.A., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (contract execution), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102 (2d Cir. 2010); *Evangelical Lutheran Church in Am. v. Atl. Mut. Ins. Co.*, 973 F. Supp. 820, 823 (N.D. Ill. 1997) (decision to deny coverage), other courts have found that the location of the alleged damage or loss is "significant" for purposes of analyzing the convenience of a particular venue. *See* discussion *supra* Part II.A; *Uffner*, 244 F.3d at 42; *Gulf Ins.*, 417 F.3d at 358. Besides, the record reveals that Bartile's "locus of operative facts" approach does not generate a single, alternative venue: the contract was executed in Utah, and the denial of

-27-

coverage occurred in Colorado.

## 2. Accessibility of Witnesses and Sources of Proof

The accessibility of witnesses and sources of proof weighs against transfer. "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Cook*, 816 F. Supp. at 669; *see also Palace Exploration Co.*, 316 F.3d at 1121-22 (limiting its consideration of the § 1404(a) factors to the location of the witnesses). To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) "indicate the quality or materiality of the[ir] testimony"; and (3) "show[] that any such witnesses were unwilling to come to trial . . .[,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary." *Scheidt*, 956 F.2d at 966 (brackets omitted) (internal quotation marks omitted); *see* 15 Wright, Miller & Cooper, *supra* note 13, § 3851, at 227–28 ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, . . . the application for transferring the case should be denied . . . ."); 17 Moore, *supra*, § 111.13[f][v] ("The materiality of the prospective witnesses [sic] testimony, and not merely the number of prospective witnesses, will determine the extent to which their convenience will be weighed." (citation omitted)). Although Bartile alleges that the majority of potential witnesses are Utah residents and are subject to compulsory process, it has neither identified those witnesses with specificity nor indicated the subject matter of their testimony.

### 3. Cost of Making Necessary Proof

The cost of making necessary proof weighs against transfer. Bartile contends that litigating the case in Wyoming potentially would exceed the cost of litigating the case in Utah due to the travel expenses of the witnesses. This argument fails to justify a transfer because the record contains no evidence concerning the potential costs of litigating the case in Wyoming. *See Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995).

### 4. Difficulties that May Arise from Congested Dockets

The difficulties of court congestion weigh against transfer. When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge. *See REO Sales, Inc. v. Prudential Ins. Co. of Am.*, 925 F. Supp. 1491, 1495 n.3 (D. Colo. 1996); *Hess Oil V.I. Corp. v. UOP, Inc.*, 447 F. Supp. 381, 384 (N.D. Okla. 1978). In this action, based on each of these statistics, the District of Wyoming has a substantially less congested docket than the District of Utah. *See* Administrative Office of the United States Courts, Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsd2008.pl (2008).

### 5. Conflict of Laws

The conflict-of-laws factor weighs slightly against transfer. In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that

provides the governing substantive law. *See Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567–68 (10th Cir. 1978); *Cook*, 816 F. Supp. at 669. This factor receives less weight when the case involves "relative[ly] simpl[e]" legal issues. *Scheidt*, 956 F.2d at 966 (noting that "the applicability of Florida law is not a significant concern in light of the relative simplicity of the legal issues involved in the common law fraud and breach of contract claims"). This factor also is less significant because federal judges are qualified to apply state law. *See Chubb v. Union Pac. R.R. Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995). In this diversity action, as explained *infra* Part III, Wyoming provides the governing substantive law. Although this determination favors the retention of this action in Wyoming, this factor is not entitled to great weight because the action does not involve complex legal issues, the substantive laws of Wyoming and Utah are essentially equivalent with respect to the relevant issues, and the judges in each potential forum are qualified to decide the state-law issues.

### 6. Advantage of Having Local Court Determine Questions of Local Law

This factor weighs slightly against transfer. When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale. *See Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 581 (D. Kan. 2000) (transferring an action to a federal district

court whose substantive state law applied to the contract); *see also Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1233 (D. Colo. 2005) ("There is a local interest in having localized controversies decided at home." (internal quotation marks omitted)).  In this action, the merits involve a dispute over the parameters of the duty to defend and indemnify under CGL insurance policies. Although the CGL policies were negotiated, underwritten, and executed outside of Wyoming, the potentially insured actions consist of allegedly negligent work on a luxury hotel in Wyoming.  Furthermore, as explained *infra* Part III, Wyoming state law also governs the interpretation of the CGL policies.

### 7.    Remaining Factors

The remaining factors are either neutral or irrelevant.  In particular, Bartile has not identified any obstacles to a fair trial in Wyoming.  *Chubb*, 908 F. Supp. at 855.  Bartile also has not raised any questions regarding the enforceability of a judgment against it.  *Id.*; *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 450 (W.D.N.C. 1989).  Finally, Bartile has not claimed that any other practical considerations would make litigation in Utah more easy, expeditious, or economical than litigation in Wyoming.

In sum, the district court did not abuse its discretion in denying Bartile's motion to transfer.  More specifically, it did not render an "arbitrary, capricious, whimsical, or manifestly unreasonable" judgment.  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1506 (2010).

## III. CHOICE OF LAW

We review the district court's choice-of-law determination de novo. *Moses v. Halstead*, 581 F.3d 1248, 1251 (10th Cir. 2009). "In a diversity action, we apply the substantive law of the forum state, including its choice of law rules." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941)). Wyoming is the forum state. Under Wyoming law, courts engage in a choice-of-law analysis only if the laws of Wyoming actually conflict with those of another state. *Act I, LLC v. Davis*, 60 P.3d 145, 149 (Wyo. 2002). "The existence of a conflict can only be determined in the context of a specific law applied to a specific issue." *Id.* "When there is no conflict, the [c]ourt applies the law of the forum." *Id.* "A federal district court's state-law determinations are entitled to no deference and are reviewed de novo." *Willis v. Bender*, 596 F.3d 1244, 1254 (10th Cir. 2010) (brackets omitted) (internal quotation marks omitted).

In this action, the district court applied Wyoming law because it found no actual conflict between the laws of Wyoming and Utah. On appeal, Bartile argues that the district court should have applied Utah law because the laws of Wyoming and Utah conflict regarding (1) the admissibility of extrinsic evidence in determining the scope of an insurer's duty to defend, and (2) the definition of "accident." Although the laws of Wyoming and Utah undeniably conflict in

-32-

certain respects, we affirm because this conflict is not *material* and would not produce different outcomes.

## A.    Extrinsic Evidence

The district court properly held that the laws of Utah and Wyoming prohibit the consideration of extrinsic evidence with respect to the CGL policies.  In general, under Wyoming and Utah law, courts determine the scope of an insurer's duty to defend by "comparing the language of the insurance policy with the allegations of the complaint."  *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001) (internal quotation marks omitted); *accord Lawrence v. State Farm Fire & Cas. Co.*, 133 P.3d 976, 980 (Wyo. 2006) (noting that courts "examine the terms of [the insurance] policy and the allegations contained in the . . . complaint" (internal quotation marks omitted)); *Reisig v. Union Ins. Co.*, 870 P.2d 1066, 1069 (Wyo. 1994) ("[W]e look *only* to the allegations of the Complaint filed by [the third-party complainant] to see if there is alleged a loss caused by an occurrence as required by the CGL policy." (emphasis added) (internal quotation marks omitted)).  "The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage." *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000); *accord Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1214 (Utah 2006) ("The test is whether the complaint alleges a risk within the coverage of the policy." (internal quotation marks omitted)).

Even though Wyoming and Utah generally prohibit the consideration of evidence outside of the complaint to determine the scope of an insurer's duty to defend, Utah law permits a court to consider extrinsic evidence in limited circumstances. Under Utah law, the admissibility of extrinsic evidence depends on the terms of the insurance policy.[14] *Estate of Therkelsen*, 27 P.3d at 561. Extrinsic evidence is not admissible "[i]f the parties make the duty to defend dependent on the *allegations* against the insured." *Id.* By contrast, extrinsic evidence is admissible "if . . . the parties make the duty to defend dependent on whether there is actually a 'covered claim or suit.'" *Id.* In other words, the key question is whether the duty-to-defend clause "is triggered by the facial language

---

[14]    When determining the scope of an insurer's duty to defend, Wyoming and Utah courts also consider extrinsic evidence in other circumstances. For example, Utah courts appear to examine extrinsic evidence when the insurance policy is ambiguous. *See Gen. Sec. Indem. Co. of Ariz. v. Tipton*, 158 P.3d 1121, 1123 (Utah Ct. App. 2007) ("Where there is ambiguity in a written document, the first order of business is to consider any extrinsic evidence which might resolve the ambiguity."); *see also* 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 200:21 (3d ed. 2005) ("In determining the existence of a duty to defend, it has been held that extrinsic facts may be considered where the complaint is ambiguous or inadequate . . . ."). Wyoming courts rely on extrinsic evidence when the insurer has actual knowledge of facts that may result in the claim falling within the policy's coverage. *See Sabins v. Commercial Union Ins. Cos.*, 82 F. Supp. 2d 1270, 1275–78 (D. Wyo. 2000); *see also* 14 Russ & Segalla, *supra* note 14, § 200:17 ("[S]ome jurisdictions look to actual knowledge of facts . . . in addition to the allegations of the complaint, when determining an insurer's duty."); 14 Russ & Segalla, *supra*, § 200:21 ("In addition to the pleadings, some jurisdictions also consider known or discoverable facts . . . in determining whether the insurer has a duty to defend."). On appeal, Bartile never argues that the CGL policies were ambiguous or that EMC had actual knowledge of the potential claims.

of a complaint or whether the clause is triggered by the actual facts underlying the complaint." *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 216 P.3d 971, 972 (Utah Ct. App.), *cert. granted*, 221 P.3d 837 (Utah 2009).

In this action, EMC issued a series of CGL policies to Bartile, covering the period from November 1, 2001, to November 1, 2004. The CGL policies contained identical duty-to-defend clauses that provided, in relevant part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" *to which this insurance applies*. We will have the right and duty to defend the insured against any *"suit"* seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

Aplt. App. at 727, 740, 785, 850 (emphasis added). Under the CGL policies, the term "suit" is defined as "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are *alleged*." *Id.* at 739, 799, 864 (emphasis added).

We conclude that the CGL policies here preclude the admission of extrinsic evidence to determine the scope of EMC's duty to defend. Accordingly, insofar as the mandates of Wyoming and Utah law are not conterminous concerning the admission of extrinsic evidence, this inconsistency is not material in that it does not generate on the facts of this case an actual conflict of law.

In each of the CGL policies, EMC assumes the duty to defend against any

-35-

"suit" seeking "damages because of . . . property damage." *Id.* at 727, 740, 785, 850. The term "suit," in turn, refers to civil proceedings in which a party "allege[s]" the existence of damages within the coverage of the applicable CGL policy. *Id.* at 739, 799, 864. Although Bartile contends that the duty to defend allows the consideration of extrinsic evidence because the phrase "to which this insurance applies" is the equivalent of "covered claim," the definition of the term "suit" indicates that the duty to defend depends on the "allegati[on] [of] liability within the coverage afforded by the policy" rather than on a determination that the suit is actually covered by the policy. *Estate of Therkelsen*, 27 P.2d at 561.

Indeed, when interpreting identical or substantially similar duty-to-defend clauses under Utah law, courts have rejected the use of extrinsic evidence. *See, e.g.*, *Mid-Am. Pipeline Co. v. Mountain States Mut. Cas. Co.*, No. 2:05-CV-153, 2006 U.S. Dist. LEXIS 30245, at *7–8 (D. Utah May 8, 2006) (prohibiting extrinsic evidence when the policy stated that the insurer will "defend any suit seeking those damages to which this insurance applies" (internal quotation marks omitted)); *H.E. Davis & Sons, Inc. v. N. Pac. Ins. Co.*, 248 F. Supp. 2d 1079, 1087 (D. Utah 2002) (prohibiting extrinsic evidence when the policy stated that the insurer will "defend the insured against any 'suit'" that seeks "damages because of . . . 'property damage' to which this insurance applies"); *see also* *Rosas v. Eyre*, 82 P.3d 185, 189-90 (Utah Ct. App. 2003) (prohibiting extrinsic evidence when the policy stated that the insurer "will . . . provide a defense at our

expense by counsel of our choice, even if the suit is groundless, false or fraudulent," against any claim or suit seeking "damages because of . . . property damage caused by an occurrence to which this coverage applies").[15]

Thus, the district court properly held that Wyoming and Utah law are not in actual conflict regarding the admissibility of extrinsic evidence in this action, even though they employ slightly different tests to decide whether to consider extrinsic evidence in determining an insurer's duty to defend.

## B. Definition of "Accident"

The district court properly held that Wyoming and Utah law are not in actual conflict regarding their definitions of "accident" with respect to these particular CGL policies. Under these CGL policies, EMC assumes the duty to defend against any suits seeking damages for property damage caused by an "occurrence" within the coverage territory. Aplt. App. at 727, 740, 785, 850. An "occurrence," in turn, is defined as an "accident, including continuous or repeated

---

[15] Before considering extrinsic evidence, courts have required the insurance policy to use the phrase "covered by" or to necessitate the finding of objective facts. *See e.g.*, *Westport Ins. v. Ray Quinney & Nebeker*, No. 2:07-CV-236-TC, 2009 U.S. Dist. LEXIS 69203, at *39 & n.6 (D. Utah Aug. 7, 2009) (allowing extrinsic evidence when the policy stated that the insurer has the duty "to defend any claim for loss against any insured *covered by* [the policy], even if such claim is groundless, false or fraudulent" (emphasis added) (internal quotation marks omitted)); *Equine Assisted Growth & Learning Ass'n*, 216 P.3d at 972 (allowing extrinsic evidence when the policy stated that the insurer has the duty to defend claims made "by, on behalf of, or in the right of [the insured]" because this duty is triggered by "objective facts, the truth or falsity of which are not determined solely by the allegations" of the complaint (internal quotation marks omitted)).

exposure to substantially the same general harmful conditions." *Id.* at 738, 798, 863. Because the CGL policies do not define "accident," we turn to state law to define this term. *See Estate of Therkelsen*, 27 P.3d at 559; *Reisig*, 870 P.2d at 1069–70.

Based on a review of the relevant case law, Wyoming and Utah define the term "accident" differently when interpreting CGL policies. Under Wyoming law, courts define the term "accident" as:

> [A] fortuitous *circumstance, event, or happening*, an *event* happening without any human agency, or if happening wholly or partly through human agency, an *event* which under the circumstances is unusual or unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for *event, happening or occurrence*; . . . chance or contingency; fortune; mishap; some sudden and unexpected *event* taking place without expectation, upon the instant, rather than something which continues, progresses or develops . . . .

*Reisig*, 870 P.2d at 1069–70 (emphasis added) (quoting *Wright v. Wyo. State Training Sch.*, 255 P.2d 211, 218 (Wyo. 1953)). "By its very nature an accident contemplates an unforseen *event* that is neither intended nor expected." *Great Divide Ins.*, 2006 U.S. Dist. LEXIS 94826, at *21 (emphasis added).

By contrast, under Utah law, courts define the term "accident" as:

> [T]he word [accident] is descriptive of means which produce *effects* which are not their natural and probable consequences . . . . An *effect* which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.

*Nova Cas. Co. v. Able Constr., Inc.*, 983 P.2d 575, 579 (Utah 1999) (emphasis

added) (quoting *Richards v. Standard Accident Ins. Co.*, 200 P. 1017, 1023 (Utah

1921)).  The Utah Supreme Court recently clarified that "*harm or damage* is not

accidental if it is the natural and probable consequence of the insured's act or

should have been expected by the insured."  *N.M. ex rel. Caleb v. Daniel E.*, 175

P.3d 566, 569 (Utah 2008) (emphasis added).  Thus, Wyoming law focuses on the

unexpectedness of the *event*, while Utah law focuses on the unexpectedness of the

*result* or *injury*.[16]

Despite this definitional difference, Wyoming and Utah law are not in

---

[16]     Bartile unsuccessfully attempts to draw other distinctions between
the definitions of "accident" under Wyoming and Utah law.  For example, Bartile
observes that Utah "focus[es] on whether an occurrence caused property damage,
not how the remedy for that damage was pled in legal papers."  Aplt. Opening Br.
at 23.  The case law illustrates, however, that Wyoming and Utah both consider
"the facts alleged in the complaint" rather than "the label counsel applied to a
particular cause of action."  *Matlack v. Mountain W. Farm Bureau Mut. Ins. Co.*,
44 P.3d 73, 78 (Wyo. 2002); *accord Great Am. Ins. Co. v. Woodside Homes
Corp.*, 448 F. Supp. 2d 1275, 1285–86 (D. Utah 2006) ("Utah law looks to the
substance of a particular claim not its form"); *First Wyo. Bank, N.A. v. Cont'l Ins.
Co.*, 860 P.2d 1094, 1099 (Wyo. 1993).

Bartile also notes that Utah expressly disclaimed a "foreseeability" test for
ascertaining the existence of an "accident."  Aplt. Opening Br. at 22–23.
Although the Utah Supreme Court indicated that "the test is not whether the result
was foreseeable, but whether it was expected," *N.M. ex rel. Caleb*, 175 P.3d at
571 (internal quotation marks omitted), the court was concerned that importing
the meaning of "foreseeability" from tort law would "render[] coverage
completely illusory," *id.* at 571 n.7.  But Wyoming has not imported the
definition of "foreseeable" from tort law and, like Utah, uses the concept of
"expected" in its definition of "accident."  *See Reisig*, 870 P.2d at 1069–70; *see
also Great Divide Ins.*, 2006 U.S. Dist. LEXIS 94826, at *21.

actual conflict because the difference is immaterial to the alleged claims. *Act I*, 60 P.3d at 149. In this action, even though the underlying complaints plead claims under several labels, the claims all arise out of Bartile's allegedly negligent roofing work and its alleged breach of its contractual duties to perform roofing work, indemnify the general contractor, and obtain insurance for the general contractor. Under Wyoming and Utah law, "the natural results of [an insured's] negligent and unworkmanlike construction do not constitute an occurrence triggering coverage under a [CGL] policy."[17] *Great Divide Ins.*, 2006 U.S. Dist. LEXIS 94826, at *23 (holding that an event is not an "accident" under Wyoming law if defendant breached the underlying construction contract and the damages are "the natural and foreseeable result" of an insured's negligent construction work); *accord Great Am. Ins.*, 448 F. Supp. 2d at 1281 ("[A]n insured's own faulty or negligent work is not fairly characterized as an

---

[17]     EMC contends that—as a categorical matter—insurers have no duty to defend against breach-of-contract claims under Wyoming or Utah law. We disagree. It is true that under Wyoming law, a breach of contract never constitutes an "accident." *See Great Divide Ins.*, 2006 U.S. Dist. LEXIS 94826, at *30; *First Wyo. Bank*, 860 P.2d at 1099; *Action Ads, Inc. v. Great Am. Ins. Co.*, 685 P.2d 42, 43-44 (Wyo. 1984). However, Utah courts "ha[ve] not adopted wholesale the notion that [CGL] policies confine the insurer's liability to tort actions alone." *Great Am. Ins.*, 448 F. Supp. 2d at 1285. However, as discussed in the text *supra*, on the facts presented here, this point of difference is not material to the choice-of-law issue. Concerning the question that these facts place at issue—*viz.*, whether the natural results of an insured's unworkmanlike or negligent construction can constitute an occurrence (i.e., accident) triggering coverage under a CGL policy—the law of Wyoming and Utah is in agreement, answering in the negative.

occurrence under a [CGL] policy."); *H.E. Davis*, 248 F. Supp. 2d at 1084 (holding

that the insured's negligent work was not an "accident" under Utah law because

the consequences of such work were "natural, expected, or intended").[18]

In sum, the district court properly found that Wyoming and Utah would

apply the same law to this action regarding the admissibility of extrinsic evidence

and the definition of the term "accident."  The district court also correctly applied

the law of the forum.

## IV.    RECOUPMENT OF COSTS

"We review the district court's grant of summary judgment de novo, using

the same legal standard applied by the district court." *Apartment Inv. & Mgmt.*

*Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1192 (10th Cir. 2010).  Summary

judgment should be granted if "there is no genuine issue as to any material fact

and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c)(2).  When applying this standard, "[w]e examine the factual record and

---

[18]    Bartile complains that the district court improperly relied on *H.E. Davis*.  Because *H.E. Davis* used the term "foreseeable" in finding that the negligent action was not an "accident," Bartile claims that *H.E. Davis* was effectively overruled by *N.M. ex rel. Caleb*.  Aplt. Opening Br. at 21–23; Aplt. Reply Br. at 7–8.  As discussed *supra* note 16, however, the Utah Supreme Court was concerned with importing the meaning of "foreseeability" from tort law. *N.M. ex rel. Caleb*, 175 P.3d at 571 n.7.  Furthermore, *H.E. Davis* is consistent with *N.M. ex rel. Caleb* because it found that the negligent results of the construction were not "expected."  *H.E. Davis*, 248 F. Supp. 2d at 1084.  The district court also did not err in omitting *N.M. ex rel. Caleb* from its discussion in this case because the Utah Supreme Court followed its own precedent in defining the term "accident" for purposes of a CGL policy.

draw all reasonable inferences in the light most favorable to the nonmoving party." *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

The district court denied EMC's motion for summary judgment with respect to the request to recoup the costs of defending Bartile in the underlying action. EMC argues that it undertook this defense subject to a reservation of rights. Because the district court concluded that EMC did not have a duty to defend Bartile against the allegations, EMC contends that it is entitled to recoup those defense costs.

Under Wyoming law,[19] courts disfavor insurer's attempts to defend insureds while retaining the right to deny coverage and recoup defense costs at a later date. *Shoshone First Bank*, 2 P.3d at 515–16; *see Am. States Ins. Co. v. Ridco, Inc.*, No. Civ. 95CV158D, 1996 WL 33401184, at *3 (D. Wyo. Feb. 8, 1996). "The insurer is not permitted to unilaterally modify and change policy coverage." *Shoshone First Bank*, 2 P.3d at 515. Furthermore, "'[a] reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insureds.'" *Id.* at 516 (quoting *Ridco*, 1996 WL 33401184, at *3). "'If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the

---

[19] We have not engaged in a choice-of-law analysis with respect to the recoupment of costs. In denying EMC's motion to recoup costs, the district court applied Wyoming law. Although EMC attempts to distinguish the Wyoming case law on appeal, it limits its challenge to the merits of the denial. Neither party disputes the application of Wyoming law.

costs of defending the underlying action.'" *Id.* (quoting *Ridco*, 1996 WL 33401184, at *3).

In this action, EMC has no right to recoup its costs of defending Bartile. As an initial matter, the CGL policies contain no provisions reserving EMC's right to recoup defense costs from Bartile. Although EMC subsequently issued a reservation-of-rights letter, this letter constituted a unilateral attempt either to modify the existing CGL policies or to create a new contract authorizing recoupment. Neither attempt succeeds. As *Shoshone First Bank* instructs, EMC should have denied Bartile a defense at the outset of the underlying action instead of defending against the action for several years and only now attempting to recoup its defense costs.

EMC attempts to distinguish *Shoshone First Bank* on its facts. In particular, EMC notes that *Shoshone First Bank* addressed an insurer's request to recoup its defense costs in a case involving an amalgam of covered and non-covered claims. By contrast, EMC explains that it seeks to recover defense costs in a case involving only non-covered claims. In reaching its conclusion in *Shoshone First Bank*, however, the Wyoming Supreme Court favorably cited "a very clear and incisive articulation of the problem" with reservation-of-rights letters. 2 P.3d at 516 (referencing *Ridco*, 1996 WL 33401184, at *3). As noted *supra*, the problem is that "[a] reservation of rights letter does not create a contract" and is therefore unenforceable. *Id.* This "articulation" constitutes a

strong indication of how the Wyoming Supreme Court would rule on this matter where only non-covered claims are at issue. Finally, despite EMC's requests, we decline to reverse the district court merely because Wyoming follows the minority position on the recoupment-of-costs issue.[20]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's orders denying the motions to dismiss, denying the motion to transfer, and granting summary judgment in favor of EMC on the duty-to-defend issue, and denying summary judgment to EMC on the recoupment-of-costs issue.

---

[20]    In its reply brief, EMC argues that the court should enforce the reservation-of-rights letter. First, EMC contends that the letter is enforceable absent an express agreement because it "timely and explicitly reserve[d] its right to recoup the costs" and "provide[d] specific and adequate notice of the possibility of reimbursement." Aplee. Reply Br. at 3. Second, EMC claims that the letter is enforceable because it was an implied-in-fact contract. Third, EMC asserts that the letter is enforceable because "[t]he defense was offered and provided under the reservation of rights, not under obligations established by the [CGL] polic[ies]." *Id.* at 6. Nevertheless, EMC waived these arguments by failing to raise them before the district court, *see Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005) ("[I]ssues not raised below are waived on appeal."), and in its opening brief, *see* Fed. R. App. P. 28(a)(9)(A); *Bronson*, 500 F.3d at 1104.