2002 WY 183

**ACT I, LLC, Appellant (Plaintiff),**

v.

**Charles B. DAVIS, R. Lee Tucker, DNR Oil & Gas, Inc., and Tindall Operating Company, Appellees (Defendants).**

No. 01–168.

Supreme Court of Wyoming.

Dec. 30, 2002.

Stephen H. Kline of Kline Law Office, P.C., Cheyenne, Wyoming; Anthony L. Leffert of Clanahan, Tanner, Downing & Knowlton, P.C., Denver, Colorado, Representing Appellant. Argument by Mr. Leffert.

Peter A. Bjork and David R. Little of Bjork, Lindley, Danielson & Little, P.C., Denver, Colorado; John M. Daley of Daly Law Associates, P.C., Gillette, Wyoming, Representing Appellee. Argument by Mr. Little.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellees own working interests in various oil and gas leases located in the Powder River Basin of Campbell County, Wyoming. Appellant and Appellees entered into an agreement by which Appellant agreed to obtain financing for a project related to developing and working the mineral leases in exchange for the opportunity to buy a thirty-five percent share of the mineral leases. Appellant claims that it procured a suitable financing commitment and thereby fulfilled its obligation under the agreement. Appellees, however, declined to finalize any financing agreement and refused to sell the thirty-five percent ownership interest in the mineral leases to Appellant. Appellant sued for breach of contract, breach of the duty of good faith and fair dealing, and for specific performance.

[¶ 2] Appellees moved for summary judgment, arguing the agreement was unenforceable due to the operation of the statute of frauds. The district court granted summary judgment to Appellees. We find that, as a matter of law, no statute of frauds is applicable to the agreement. We further find that issues of material fact exist regarding the interpretation of the agreement. Summary

* Chief Justice at time of oral argument.

judgment was inappropriate, and we remand this case back to the district court for appropriate further proceedings.

## ISSUES

[¶ 3]    Appellant presents two issues:

1.   Does Wyoming or Colorado law govern the rights of the parties to a contract entered into in the State of Colorado by Colorado residents dealing with the right to purchase and develop an interest in mineral properties located in the State of Wyoming?

2.   Was the written contract entered into between the parties, obligating Appellees to sell Appellants [sic] a 35% interest in certain coalbed methane leases upon the Appellants [sic] obtaining acceptable financing for the project, enforceable under Wyoming and Colorado law once the Appellees agreed to the financing?

Appellees respond with three issues:

1.   Do Wyoming conflict of law principles require application of Colorado law to Appellant's causes of action where the majority of significant factors related to the contract occurred in, or are connected exclusively with, Colorado?

2.   Does Colorado's credit agreement statute of frauds, Colo.Rev.Stat. § 38–10–124, bar Appellant's causes of action because it is undisputed that the DNR–Tindall Group never signed a writing accepting any of the proposed credit agreements?

3.   If Wyoming law applies, does Wyoming's statute of frauds, Wyo. Stat. Ann. § 1–23–105, bar Appellant's causes of action because the DNR–Tindall Group never signed a writing accepting the new condition in the proposed credit agreements requiring the DNR–Tindall Group to assign a real property overriding royalty interest to the proposed lender?

## FACTS

[¶ 4] Appellee Charles B. Davis is the President of Appellee DNR Oil and Gas, Inc. Appellee R. Lee Tucker is the President of Appellee Tindall Operating Company. Appellees are all Colorado residents and Colorado corporations. Appellant, ACT I, is a limited liability company doing business in Colorado.

[¶ 5]    Appellees are the owners of a working interest in certain mineral leases in Wyoming. This working interest includes the right to develop and produce coalbed methane natural gas. Appellees ultimately decided they wanted to explore for, drill and gather the coalbed methane themselves. To this end, on March 20, 2000, Appellees entered into a letter of intent (the "LOI") with Appellant. Pursuant to the LOI, Appellant was to procure non-recourse financing for the project in exchange for a percentage ownership in the leases. Some of the pertinent language from the LOI includes:

> The parties agree to work together on a best efforts basis to arrange for the completion of the financing upon receipt of an acceptable financing commitment.

> * * * *

> ... In exchange for ACT I's arranging financing for the Project, ACT I will purchase and DNR and Tindall will sell, a 35% proportionally reduced working interest participation in the [project]....

> ... The Acquisition Price shall be due upon execution of definitive agreements, including, among other things, ... financing documents for the Project.

> * * * *

> ... [T]he parties understand and agree that the transactions contemplated by this letter are non-binding and subject to the following:

> (a) Completion of definitive agreements incorporating the terms of this letter on or before April 20, 2000 which deadline shall automatically extend for successive 10 day increments until any party gives notice of its intent to terminate this Letter of Intent delivered to all parties at least two (2) business days prior to such termination.

On May 4, 2000, the parties entered into an agreement extending the duration of the LOI (the "Extension"). (Unless differentiated, further references to the LOI include both the LOI and the Extension.) The Extension stated in pertinent part that ACT I had until May 20

in order to obtain financing arrangements for the Project and the parties.

* * * *

The parties agree to continue to work together on a best efforts basis to arrange for the completion of the financing upon receipt of an acceptable financing commitment.

* * * *

Upon receipt of an acceptable financing commitment, DNR, Tindall, and ACT I shall enter into definitive agreements to reflect the terms outlined in the Letter of Intent.

The parties understand and agree that the transactions contemplated by the Letter of Intent are subject to the following: (a) Obtaining of a financing commitment by May 20, 2000 with definitive agreements incorporating the terms of the Letter of Intent to be finalized by May 31, 2000. To the extent the financing commitment is received and the parties are working toward completion of the definitive agreements, the parties agree to automatically extend for successive 10 day increments the Letter of Intent until any party gives notice of its intent to terminate the Letter of Intent delivered to all parties at least two (2) business days prior to such termination.

Both the LOI and the Extension were drafted by Appellant. Neither agreement contains a governing law provision.

[¶ 6] Appellant successfully negotiated a financing commitment from a lending institution. Although disputed, there is evidence in the record indicating that Appellees orally accepted the terms of the proposed financing commitment. Ultimately, however, Appellees decided they did not want to complete the deal and consequently never signed any loan documents.

[¶ 7] Appellant believed that it successfully had completed its obligations under the LOI by procuring a financing commitment that Appellees accepted. It demanded that Appellees allow it to purchase the thirty-five percent of the mineral leases to which Appellant alleged it was entitled under the terms of the LOI. Appellees countered that they did not owe any duty under the LOI unless and until they accepted a financing commitment in writing. Appellant brought suit against Appellees alleging breach of contract, breach of the covenant of good faith and fair dealing, and demanding specific performance.

[¶ 8] Appellees answered, brought various counterclaims, and moved for summary judgment on all claims against them. Appellees argued that, because of the operation of the statute of frauds, they needed to fully execute a written financing agreement before any other terms of the LOI could be legally enforceable against them. Wyoming and Colorado have different versions of a statute of frauds that might apply so much argument was presented on whether the Colorado or the Wyoming version applies. The district court granted Appellees' motion for summary judgment, finding that enforcement of the LOI was barred by the operation of the statute of frauds. The district court applied Colorado law but specifically held that the outcome would be the same even under Wyoming law.

## STANDARD OF REVIEW

[¶ 9] When we review the granting of a summary judgment, we employ the same standards and use the same materials as were employed and used by the trial court. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Summary judgment is appropriate only when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the trial court's ruling. *Bevan v. Fix*, 2002 WY 43, ¶ 13, 42 P.3d 1013, ¶ 13 (Wyo. 2002); *Hirschfield v. Board of County Comm'rs of Teton Cty.*, 944 P.2d 1139, 1141 (Wyo.1997). The determination that a given

agreement is within the statute of frauds is a question of law which we review de novo. *Maycock v. Maycock,* 2001 WY 103, ¶ 12, 33 P.3d 1114, ¶ 12 (Wyo.2001).

## DISCUSSION

[¶ 10] The first issue presented by Appellant is too broadly phrased. When parties dispute the applicable law, there must be an actual conflict between the laws or interests of Wyoming and the laws or interests of another state. In the absence of a conflict, there is no need for the court to engage in a conflict of laws analysis. The existence of such a conflict can only be determined in the context of a specific law applied to a specific issue. 15A C.J.S. *Conflict of Laws,* § 27 (2002). As an example, the analytical approach to a conflict of law question has been described within the framework of the Restatement (Second) of Conflict of Laws as follows:

The Second Restatement method is constructed around the principle that the state with the most significant contacts to an issue provides the law governing that issue. *See [Ingersoll v. Klein,]* 46 Ill.2d 42, 262 N.E.2d [593] at 594–95 [Ill.1970]. A court therefore conducts a separate choice-of-law analysis for each issue in a case, attempting to determine which state has the most significant contacts with that issue. *International Adm'rs, Inc. v. Life Ins. Co. of North America,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). The Second Restatement enumerates specific factors that identify the state with the most significant contacts to an issue, and the relevant factors differ according to the area of substantive law governing the issue and according to the nature of the issue itself. *See, e.g.,* Restatement (Second) at §§ 6, 145, 188. To properly apply the Second Restatement method, a court must begin its choice-of-law analysis with a characterization of the issue at hand in terms of substantive law. *Id.* at § 7. By prescribing this analytical approach, the Second Restatement follows the principle of *depecage,* which has been long applied in con-

nection with various methods for choice of law. *See* Willis L.M. Reese, *Depecage:* A Common Phenomenon in Choice of Law, 73 Colum. L.Rev. 58 (1973).

*Ruiz v. Blentech Corporation,* 89 F.3d 320, 323–24 (7th Cir.1996) (footnote omitted). We agree that *depecage* is the proper approach to a conflict of law question. We therefore will not answer Appellant's first issue as phrased because it is not for this Court to make an *a priori* determination as to the applicable law for all issues involved in this case.[1]

[¶ 11] The specific issue presented in this case is an alleged conflict between a statute of frauds in Colorado and a statute of frauds in Wyoming. There is, however, no conflict to analyze under the facts of this case. The district court determined that, under both Colorado and Wyoming law, the applicable version of the statute of frauds renders the LOI unenforceable. As discussed below, we find that neither statute of frauds applies to render the LOI unenforceable. The outcome is the same regardless of whether we apply Wyoming or Colorado law, thus it is unnecessary to specifically discuss the Colorado and Wyoming statutes or engage in a conflict of law analysis to choose between the two. When there is no conflict, the Court applies the law of the forum. 15A C.J.S. *Conflict of Laws,* §§ 27, 41 (2002); 16 Am.Jur.2d *Conflict of Laws* § 85 (1998).

[¶ 12] With regard to the substantive issue, we believe the question can be answered by looking at the general application of a statute of frauds. A statute of frauds is "[a] statute ... designed to prevent fraud and perjury by requiring certain contracts to be in writing and signed by the party to be charged." Black's Law Dictionary 1422 (7th ed.1999). The district court apparently reasoned that a statute of frauds applies to prevent the legal enforcement of the (written) LOI except upon the completion of a written financing agreement between Appellees and a lending institution. We believe this is a misapplication of a statute of frauds.

---

1. The parties are, of course, free to present argument to the district court pertaining to any alleged conflict that may arise as the case continues upon remand.

[¶ 13]   It is undisputed that the financing agreement, and even the initial financing commitment, was never accepted in writing by Appellees.  Appellant is not, however, attempting to enforce any aspect of the financing agreement.  Appellant is attempting to enforce the LOI and its Extension, both of which are in writing and signed by Appellees.  We fail to see how any version of the statute of frauds logically applies to render the terms of the LOI legally unenforceable.  Summary judgment should not have been granted on the ground of the operation of a statute of frauds.

[¶ 14]   While we could end our discussion here, Appellant remarks upon one further finding made by the district court that, in the interest of judicial economy, we deem it expedient to address.  The district court found that the LOI was unambiguous and that "[a]s a condition precedent to any assignment of interest to the [Appellant], a financing arrangement acceptable to the [Appellees] was required to be produced by the [Appellant] and accepted by the [Appellees]."  We are unclear as to the significance of this finding.  It does not appear to constitute a separate and distinct ground for granting summary judgment, nor have Appellees argued such.  Appellant argues that, to the extent this finding suggests that written acceptance of a financing agreement was necessary to invoke Appellees' duties under the LOI, the finding is inappropriate because a clear factual dispute exists regarding the nature of this condition precedent.

[¶ 15]   The finding was specifically requested by Appellees in their motion for summary judgment.  Presumably, their intent was to obtain an interpretation from the district court that bolstered their theory that a written finalization of a financing agreement was a condition precedent under the LOI. We do not interpret the finding in the order to support that position.  We agree with Appellant, however, that to the extent it does, it is mistaken.

[¶ 16]   It is for the court to determine, as a matter of law, whether a contract is ambiguous.  *Emulsified Asphalt, Inc., of Wyoming v. Transportation Comm'n of Wyoming*, 970 P.2d 858, 864 (Wyo.1998) ("Whether a contract contains an ambiguity is a question of law for the reviewing court which may be independently determined by this Court.")  Even a cursory review of the language of the LOI convinces us that the agreement is ambiguous.

As we interpret the Agreement, we are mindful that our primary focus is the intent of the parties.  *Wolter v. Equitable Resources Energy Co.*, 979 P.2d 948, 951 (Wyo.1999) (citing *Woods Petroleum Corporation v. Hummel*, 784 P.2d 242, 243 (Wyo.1989)).  If the document is clear and unambiguous, we review the four corners of the Agreement to determine the parties' intent.  *Sierra Trading Post, Inc. v. Hinson*, 996 P.2d 1144, 1148 (Wyo.2000).  Ambiguity is found if indefiniteness of expression or double meaning obscure the intent of the parties, though disagreement between the parties as to the Agreement's meaning does not give rise to an ambiguity.  *Wolter*, 979 P.2d at 951 (citing *Svalina v. Split Rock Land and Cattle Co.*, 816 P.2d 878, 881 (Wyo.1991)); *Mathis [v. Wendling,]* 962 P.2d [160] at 163–64.

*Hansen v. Little Bear Inn Co.*, 9 P.3d 960, 964 (Wyo.2000).  It is impossible to determine from the language employed in the LOI exactly how the parties intended this agreement to operate.  Reading the documents as a whole, many questions are raised.  For instance, what is meant by "best efforts?"  What is meant by "arranging financing?"  Was anything in writing required?  At what stage?  What is the effect of the termination clauses?  The language of the LOI simply does not answer these questions or allow us to determine the intent of the parties at the time the LOI was made.

[¶ 17]   Certain disputes are clear from the arguments of the parties.  Appellees contend that they owe no duty to fulfill any of their obligations under the LOI unless and until they formally execute a finalized, written financing agreement.[2]  Appellant ar-

---

2.  Appellees, at oral argument, seemed to suggest not a direct, but rather an indirect application of  ·  the statute of frauds.  Essentially, Appellees argued that the statute of frauds represents a pub-

gues that Appellees owed duties under the LOI as soon as they orally expressed agreement to the terms of a proposed financing commitment. At a minimum, Appellant argues, Appellees owed a duty to use their "best efforts" to complete the financing agreement. While a disagreement between the parties regarding the interpretation of a contract does not automatically render the contract ambiguous, in this case the language of the LOI is indefinite enough to produce ambiguities. The district court's finding that the terms of the LOI are unambiguous is incorrect.

## CONCLUSION

[¶ 18] As a matter of law, the statute of frauds does not apply to legally render the LOI unenforceable. The LOI as a whole is ambiguous with regards to the nature and timing of the obligations of the parties. The grant of summary judgment is reversed and the case remanded for further proceedings.

lic policy decision that, in order to be acceptable, a credit agreement such as that contemplated by the LOI must be in writing. Appellees argued that this policy should supplement the language of the LOI, removing any potential ambiguity in the LOI regarding the necessity of a written financing agreement. Because the decision of the district court was based upon a direct appli- cation of the statute of frauds, and not an inter- pretation of the LOI, this argument is not proper- ly before us in this appeal. It is for the district court, in the first instance, to determine the potential application and efficacy of this argu- ment should Appellees choose to pursue it upon remand.