**NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA., as subrogee of Greentree Transportation Co., Plaintiff,**

v.

**Jeffery TOLAND, individually, and W.R. Drinkwalter and Sons Inc., and James Cunningham, Defendant.**

Case No: 15–CV–0010–J

United States District Court, D. Wyoming.

Signed February 16, 2016

Filed February 17, 2016

Donald G. Moore, Deisch Marion & Klaus, Denver, CO, Ryan L. Woody, Matthiesen Wickert Lehrer SC, Hartford, WI, for Plaintiff.

Brian J. Marvel, Scott E. Ortiz, Erica Rachel Day, Williams Porter Day & Neville P.C., Casper, WY, for Defendant.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Alan B. Johnson, United States District Judge

This matter comes before the Court on Plaintiff's *Motion for Summary Judgment,* Doc. 28, Defendants' opposition thereto, Doc. 36, and the parties' oral arguments heard on September 15, 2015. Having considered the pleadings, the applicable law, the parties' written submissions, oral arguments and materials offered in support of their respective positions, the Court finds and orders as follows.

### FACTS

Defendant Cunningham was an owner-operator and worked under dispatch for Greentree Transportation Co. (Greentree) driving a truck. At all times relevant to this case, Cunningham was an "insured person" under a group Truckers Occupational Accident Insurance policy (the Policy) issued by Plaintiff. The Policy states

that "[t]his Policy is governed by the laws of the state in which it is delivered." Doc. 24, Ex. B at 1. Plaintiff states in its Amended Complaint that the Policy was issued and delivered in the state of Pennsylvania. See, ECF Doc. No. 16, ¶ 1.

The Policy contains the following relevant provisions:

Subrogation. To the extent the Company pays for losses incurred, the Company may assume the right and remedies of the insured person related to such loss. The Insured Person agrees to assist the Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company.

Conditional Claim Payment. If an Insured Person suffers a Covered Loss(es) as the result of Injuries for which, in the opinion of the Company, a third party may be liable, the Company will pay the amount of benefits otherwise payable under the Policy. However, the Insured Person must first agree, in writing, to refund the lesser of: (1) the amount actually paid for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es).

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. The provision shall not apply where prohibited by law.

Am. Compl., ¶¶ 15, 23.

On December 17, 2010, while under dispatch for Greentree, Cunningham was driving on I–90 in Johnson County, Wyoming. Defendant Jeffery Toland rear-ended Cunningham's tractor-trailer. At the time of the accident, Jeffery Toland was in the course and scope of his employment with W.R. Drinkwalter and Sons, Inc. (Drinkwalter). Cunningham suffered injuries from the accident, which resulted in medical bills and lost wages. He submitted his medical claims and lost wage claims under the Policy for medical and indemnity benefits. Plaintiff paid $50,660.33 in medical benefits and $33,008.55 in temporary total disability benefits to and on behalf of Cunningham. At an unknown time, but assumedly sometime in 2011, Cunningham brought a personal injury lawsuit against Toland and Drinkwalter.

On April 13, 2011, Plaintiff received notice of this lawsuit from Cunningham's personal injury attorney via a letter of representation. On August 2, 2011, Plaintiff notified Great West Casualty Company, the liability carrier for Toland and Drinkwalter, and Cunningham's personal injury attorney, of Plaintiff s subrogation rights and lien on recovery by Cunningham. Between March 15, 2012 and December 10, 2013, Plaintiff sent subrogation lien updates to Cunningham's personal injury attorney and attempted to contact him by phone. On June 27, 2013, Plaintiff's personal injury attorney sent Plaintiff a letter requesting an itemized payment summary of the medical and indemnity benefits that National paid to and on behalf of Cunningham.

In June 2014, Great West settled the liability claim, on behalf of Toland and Drinkwalter, with Cunningham for $300,000. Plaintiff alleges and Defendants dispute that this amount included the economic damages (lost wages and medical benefits) that Plaintiff paid to Cunningham. Plaintiff learned of the settlement in November 2014 after calling Great West. Although on notice of Plaintiff s subrogation rights and lien, neither Cunningham nor Great West requested or received Plaintiff's consent to settle the subrogation claims. Cunningham and his attorney have refused to honor the terms of the Policy and reimburse Plaintiff from the

settlement proceeds for the benefits National paid because of the accident.

Plaintiff filed this claim in state court on December 14, 2014 seeking to recover $83,750.66 for amounts it allegedly paid to and on behalf of Cunningham because of the accident. Defendants removed this action to the United States District Court for the District of Wyoming on January 16, 2015. The Court ordered the action removed on January 27, 2015. Doc. 6. Subsequently, Cunningham filed an *Action for Declaratory Judgment* in the Court of Common Pleas of Dauphin County, Pennsylvania on May 13, 2015.

Plaintiff brings claims of subrogation based on a negligence theory, reimbursement based on a contract theory, and declaratory relief pursuant to 28 U.S.C. § 2201. Plaintiff filed the instant motion for summary judgment arguing that National has a valid subrogation right against Defendants Toland and Drinkwalter for benefits paid to Cunningham pursuant to Wyoming law. In the alternative, Plaintiff argues that it is entitled to a declaratory judgment that Cunningham must reimburse National the amount of occupational accident benefit paid pursuant to the terms of the policy. Thus, Plaintiff's Motion for Summary Judgment is actually a *Partial Motion for Summary Judgment*, as it will not resolve all claims in the case.

In response, Defendants contend that Pennsylvania law controls the interpretation of the policy and that pursuant to Pennsylvania law a right to subrogation and reimbursement does not exist under the policy. The Court held oral argument on Plaintiff's Motion for Summary Judgment on September 15, 2015. The Court finds that these matters are fully briefed and are ripe for disposition.

## DISCUSSION

In this order, the Court will outline the standard of review. Then the Court will discuss the conflict of law rules before turning to their application to the issues in this case. Finally, the Court will discuss the issue of whether National is entitled to bring a tort claim against Toland and Drinkwalter. A brief conclusion follows.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett,* 703 F.3d 1153, 1158 (10th Cir.2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record,

or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.,* 565 F.3d 1252, 1258 (10th Cir.2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255, 106 S.Ct. 2505.

### 1. Conflict of Law

 In diversity cases, a federal court applies the choice-of-law rules of the state in which the federal court sits. *See Mem'l Hosp. of Laramie Cnty. v. Healthcare Realty Trust Inc.,* 509 F.3d 1225, 1229 (10th Cir.2007). Because this Court sits in Wyoming, the Court applies Wyoming's choice-of-law rules. *Id.* Under Wyoming law,

> When parties dispute the applicable law, there must be an actual conflict between the laws or interests of Wyoming and the laws or interests of another state. In the absence of a conflict, there is no need for the court to engage in a conflict of laws analysis. The existence of such a conflict can only be determined in the context of a specific law applied to a specific issue.

*Act I, LLC v. Davis,* 2002 WY 183, ¶ 10, 60 P.3d 145, 149 (Wyo.2002) (citing 15A C.J.S. Conflict of Laws, § 27 (2002)).

Neither of the parties performs a conflict of law analysis for each specific issue. Plaintiff argues that Wyoming law should apply to the case for the following reasons: (1) Plaintiff brings a tort subrogation claim under a theory of negligence and "Wyoming law is to be applied to the substantive phases of tort or the actions therefor"; (2) The settlement agreement between Defendants Cunningham, Toland, and Drinkwalter contains a choice of law provision that says the agreement is to be governed by Wyoming law; (3) The conflict of law presented by Defendants is a "false conflict"; and (4) If the court finds that there is not a false conflict, Plaintiff argues that "regarding tort claims" that Wyoming law applies the traditional choice of law rule *lex loci delicti,* "the substantive law of the place where the injury occurred governs." Plaintiff argues that the car accident, which occurred in Wyoming, caused the injury in this case, and thus, the substantive law of Wyoming governs.

Defendants argue that Pennsylvania law should apply to the entire case for the following reasons: (1) The Policy contains a choice of law provision that states the policy is governed by the laws of the state in which it is delivered. The policy was undisputedly issued in Pennsylvania; (2) Wyoming law, since it is the law of the forum state that determines the conflict of law issue, recognizes the freedom to enter into contracts and generally supports choice of law provisions; and (3) Under a

conflict of law analysis, Defendants state that the Court must consider the places of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and residence of the parties. Defendants urge that all of these factors point to Pennsylvania because it is the residence of Greentree and Plaintiff, Cunningham, although a Kansas resident contracted to work for a Pennsylvania company, the subject matter of the contract involves Pennsylvania and Kansas, and the place of performance of the contract is in Kansas on behalf of the Pennsylvania company.

The Court will perform the conflict of law analysis per issue in this case.

### a. Conflict of law analysis on underlying negligence claim brought via subrogation against Defendants Toland and Drinkwalter

First, the Court will address the conflict of law analysis regarding the issue of whether Plaintiff s underlying negligence claim against Defendants Toland and Drinkwalter is destroyed by Cunningham's settlement and release. As discussed above, neither party presents a conflict of law analysis specific to this issue. Although Defendants generally argue that Pennsylvania law applies to the entire case, Defendants submit arguments based on Wyoming law.

The Court must determine whether there is a conflict between Wyoming law and Pennsylvania law. The Court will first address Wyoming law. In its brief, Plaintiff preemptively argues that *Iowa*

*Nat. Mut. Ins. Co. v. Huntley*, 78 Wyo. 380, 328 P.2d 569 (1958) does not address the issue of whether Plaintiff's subrogation claim against the third party tortfeasor is destroyed by a settlement and release. Plaintiff concludes that there is no Wyoming law on point and the Court must take an *Erie*-guess to determine the state of Wyoming law. In response, Defendants argue *Huntley* is applicable and supports the conclusion that National's claim against Defendants Toland and Drinkwalter are destroyed by their settlement and release with Plaintiff [1]

In oral argument, however, Plaintiff amended its argument that there is no Wyoming law on point. Plaintiff argued that in *Stilson v. Hodges*, 934 P.2d 736 (Wyo.1997), the Wyoming Supreme Court stated that if a third-party tortfeasor is on notice of an insurer's right to subrogation, the third-party tortfeasor may be liable to the insurer after settlement if he or she does not include the insurer in the settlement.

To assess the conflict of law issue, the Court must decide whether the controlling case in Wyoming is *Huntley* or *Stilson*.[2] In *Huntley*, a husband and wife were in a car accident that killed the wife. *Id.* at 384, 328 P.2d 569. At the time of the accident, the wife owned the car that was involved in the accident. *Id.* Following her death, the husband became the administrator of her estate. *Id.* The husband, as the administrator of the estate, received $1,425 from Iowa Mutual Insurance Company as damages for the collision. *Id.* The husband agreed that Iowa Mutual should

---

1. Defendants also argue that the Court should find that the "made whole doctrine" would apply in this circumstance. The Court need not consider this argument in its conflict of law analysis.

2. The Court will not consider whether the choice of law provision contained in the in-

surance policy trumps the conflict of law analysis. The subrogation after settlement issue is an issue between Plaintiff and third party tortfeasors, Drinkwalter and Toland, who are not parties to the policy. Thus, the choice of law policy does not govern the applicable law on this issue.

be subrogated to the rights of the administrator against third parties. *Id.* Later, an attorney for the husband, in his capacity as the administrator brought two lawsuits, one by the husband individually against the other driver (third party tortfeasor) and one by the husband, in his capacity as the administrator, against the third party tortfeasor. *Id.* at 385, 328 P.2d 569.

After learning of the lawsuits, an attorney for Iowa Mutual notified the husband's attorney of Iowa Mutual's subrogation rights and requested that the husband's attorney also represent the rights of Iowa Mutual as a subrogee in the lawsuit brought on behalf of the husband as an administrator. *Id.* The husband's attorney recognized a conflict of interest and told Iowa Mutual that he would not represent their subrogation interests in the lawsuit. *Id.* at 386, 328 P.2d 569. Following this decision, the third party tortfeasor settled both lawsuits. *Id.* Soon after the settlement, Iowa Mutual received notice and requested to be subrogated for the amount it had paid out to the administrator previously. When the husband refused to pay Iowa Mutual, Iowa Mutual sued the husband and the third party tortfeasor. *Id.* at 391, 328 P.2d 569. The trial court, on summary judgment, ruled in favor of the husband and third party tortfeasor. *Id.* Iowa Mutual appealed. *Id.*

The Wyoming Supreme Court held that Iowa Mutual had no cause of action against the tortfeasor who caused the damage involved because when an insured settles with the tortfeasor, the action by the insurer is destroyed. *Id.* at 391–392, 328 P.2d 569. Unlike in the instant case, in *Huntley*, the insurer failed to notify the tortfeasor of the insurer's subrogation rights. The Court finds that the notice to the tortfeasor distinguishes *Huntley* from the instant issue, and thus *Huntley* is not the controlling law for the issue of whether

National's underlying negligence claim brought via subrogation against Defendants Toland and Drinkwalter is destroyed by Cunningham's settlement and release.

In *Stilson*, a jury awarded Stilson a $15,050 judgment for a personal injury action against a third-party tortfeasor. *Stilson*, 934 P.2d at 737. Prior to the jury trial, Stilson accepted $3,092.48 from Allstate Insurance for her medical expenses. *Id.* Also prior to the jury trial, Allstate Insurance notified the third-party tortfeasor of its subrogation claim and instructed the third-party tortfeasor "please do not make any bodily injury liability settlements with our insured unless you satisfy or protect our interests." *Id.* During the jury trial, Stilson claimed her medical expenses as damages. *Id.* Following the jury trial, State Farm, on behalf of the tortfeasor, cut two checks—the first to Stilson for $12,147.18 and the second to Stilson and Allstate for $3,092.48. *Id.* Stilson refused to accept the payment because she did not agree that the second check should be made payable to Allstate. *Id.* After a holding a hearing, the trial court granted the tortfeasor's motion to compel satisfaction of the judgment and held that the tortfeasor should pay the clerk of court the full amount of the judgment, and the clerk of court shall hold the funds until Stilson presented the Clerk with a release from Allstate releasing State Farm Insurance from any liability for the lien declared by Allstate on the proceeds of the lawsuit. *Id.* at 738. Stilson appealed to the Wyoming Supreme Court. *Id.*

 Stilson argued that the district court erred when it ordered the tortfeasor to submit the judgment amount to the clerk. The Wyoming Supreme Court discussed conventional subrogation and stated as follows:

Conventional subrogation, which can take effect only by agreement, is synon-

ymous with assignment. *Northern Utilities Division of K N Energy, Inc. v. Town of Evansville,* 822 P.2d 829, 836 (Wyo.1991). Subrogation is defined as being " 'the substitution of another person in the place of a creditor, so that the person in whose favor [the subrogation] is exercised succeeds to the rights of the creditor in relation to the debt.' " *Commercial Union Insurance Company v. Postin,* 610 P.2d 984, 986 (Wyo.1980) (quoting *Criss v. Folger Drilling Company,* 195 Kan. 552, 407 P.2d 497, 500 (1965)). "[I]n Wyoming, causes of action for damage or injury to persons and property survive and are assignable, and consequently can be the subject of a claim for conventional subrogation." *Northern Utilities Division of K N Energy, Inc.,* 822 P.2d at 837. Likewise, a judgment creditor may assign his rights in the judgment to a third party. 47 Am.Jur.2d *Judgments* § 1011 (1995).

The assignment of a part of a debt transfers an equitable interest in that part of the debt to the assignee. 6 Am.Jur.2d *Assignments* § 81 (1963). In order to prevent the debtor from paying the assignor, the assignee must give the debtor notice that the assignment has been made. *See id.* "The general rule is that if the debtor pays the assignor after notice of a partial assignment of the debt, [the debtor] may be held liable in equity by the assignee." *Id.* at 262. *See also Independent National Bank v. Westmoor Electric, Inc.,* 164 Ariz. 567, 571, 795 P.2d 210, 214 (Ct.App.1990); *Mid–States Sales Company, Inc. v. Mountain Empire Dairymen's *739 Association, Inc.,* 741 P.2d 342, 347 (Colo. Ct.App.1987).

In this case, Hodges and State Farm received notice that Stilson had assigned a part of her claim against Hodges to Allstate because Allstate had paid Stilson's medical expenses. After receiving the assignment notice, Hodges and State Farm were obligated to pay Allstate's claim, and, should they fail to do so, they would risk being held liable to Allstate.

*Stilson v. Hodges,* 934 P.2d 736, 738–39 (Wyo.1997). Plaintiff emphasizes the last portion of that excerpt—because the tortfeasor received notice of Allstate's subrogation claim, the tortfeasor risks being liable to Allstate. The Court finds the Wyoming Supreme Court's discussion in *Stilson* confirms that Wyoming follows the majority rule that a tortfeasor's settlement with the insured, after the tortfeasor had knowledge of insurer's subrogation rights, would not prevent the insurer from later maintaining a subrogation action in its own name against the tortfeasor.

■ Having determined the relevant Wyoming law, the Court must review Pennsylvania law. Pennsylvania law on this issue states, "Where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by an insurer, such release does not bar the right of subrogation of the insurer." *St. Paul Fire & Marine Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* No. CIV.A. 85–4285, 1985 WL 4459, at *3 (E.D.Pa. Dec. 16, 1985); *see also Donegal Mut. Ins. Co. v. Silverblatt,* 36 Pa. D. & C.2d 394, 397–98 (Pa.Com.Pl.1964) ("Where, after an insurance carrier has paid a claim to the injured party, the tortfeasor, with knowledge and notice of the carrier's payment and subrogation rights procures a full release by voluntarily making a settlement with the carrier's insured, to which the carrier is not a party and without the consent of the carrier, such release and settlement does not bar an action to enforce the insurance carrier's right to subrogation,"). Thus, there is no conflict between Wyoming and Pennsylvania case law.

■ This is not the end of the conflict of law analysis, however. Defendants assert that under Pennsylvania law, a statutory scheme governing motor vehicle insurance precludes Plaintiff's subrogation claim. The relevant Pennsylvania statute sections state as follows:

In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

75 Pa. Cons.Stat. Ann. § 1720 (West).

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa. Cons.Stat. Ann. § 1722 (West).

Plaintiff urges that these statutory sections create a false conflict between Wyoming and Pennsylvania law. Plaintiff contends that the statutory prohibition on subrogation claims under section 1720 must be read in concert with section 1722, which bars a claimant from recovering the amount of benefits paid to the claimant by an insurance company from the tortfeasor in an action for damages. Plaintiff concludes that when read in concert, section 1720 and 1722 prevent double recovery like the double recovery Cunningham is allegedly receiving in this case.

Defendants argue that section 1722 should not be read in concert with section 1720 because: (1) Section 1722 is a rule of evidentiary preclusion, as evidenced by the fact that every case National cites involves either a *motion in limine* by a tortfeasor to exclude evidence of damages that would be subject to subrogation under Section 1720, or a plaintiff's challenge to an arbitration panel's use of Section 1722 to reduce an award of UM or UIM benefits; and (2) National's argument assumes that section 1720's unambiguous anti-subrogation and reimbursement provision cannot be applied as a stand-alone law unless it is also possible to apply Section 1722 to prevent the claimant from recovering duplicative benefits in his tort case. Yet, according to Defendants, no Pennsylvania court has ever held that Section 1722's application is a prerequisite to the application of Section 1720.

Plaintiff supplemented its argument during oral argument. In reply to Defendants' arguments, Plaintiff contends that these statutory provisions apply only to vehicles registered in Pennsylvania, and Cunningham's vehicle was registered in Illinois. In support of this proposition, Plaintiff cites to *Pugh v. Gov't Employees Ins. Co.*, 380 Pa.Super. 606, 608, 552 A.2d 708, 708 (1989) and *Bridges v. Gary*, 429 Pa.Super. 572, 633 A.2d 170 (1993).

In *Pugh*, an insured Maryland resident was involved in an accident in Pennsylvania while driving a vehicle that was regis-

tered in Maryland. *Id.* at 608, 552 A.2d 708. The insured brought an action against his insurer seeking to recover medical and income loss benefits under the Pennsylvania Motor Vehicle Financial Responsibility Law, *Id.* The trial court denied the insurer's motion for judgment on the pleadings, and the insurer appealed. *Id.* On appeal, the Superior Court of Pennsylvania interpreted the meaning of section 1711 of the Pennsylvania Motor Vehicle Financial Responsibility Law[3] and addressed the issue of whether a motor vehicle must both be registered and operated in Pennsylvania in order for section 1711 to apply. *Id.* at 609, 552 A.2d 708. The court held

> [T]here are two requirements for determining an insured's entitlement to recover first party benefits: (1) the insured vehicle must be a vehicle of the type required to be registered, such as an automobile, and (2) the insured vehicle must actually be registered in the Commonwealth. Since the insured vehicle in the instant case was not registered in Pennsylvania, the appellant is not obligated to pay first party benefits to appellee under the Pennsylvania Motor Vehicle Financial Responsibility Law.

*Id.* at 709–10.

In *Bridges v. Gary*, 429 Pa.Super. 572, 633 A.2d 170 (1993), the plaintiff was injured when the automobile in which he was riding as a passenger struck a parked vehicle in Philadelphia. The vehicle in which he was riding was registered in Florida and was uninsured at the time of the accident. *Id.* at 572, 633 A.2d 170. Accordingly, the plaintiff made a claim for first party benefits under the Pennsylvania Motor Vehicle Financial Responsibility Law. *Id.* The service company denied his claim and the plaintiff sued. *Id.* The trial court granted summary judgment in favor of the service company and the plaintiff appealed. *Id.* The Pennsylvania Superior Court discussed that the statute, by its provisions, allows "eligible claimants," who are otherwise unable to recover insurance benefits, to recover statutory benefits from or through the Assigned Claims Plan. *Id.* at 573, 633 A.2d 170. The Court again looked to the language in section 1711. The Court stated

> Section 1711 of the MVFRL limits the requirement to provide first party benefits coverage to vehicles that are 'registered and operated in this Commonwealth [of Pennsylvania].' 75 Pa.C.S.A. § 1711. Likewise, no motor vehicle liability insurance policy may be issued in Pennsylvania for a 'motor vehicle registered or principally garaged in" Pennsylvania unless uninsured and underinsured motorist coverages are offered.' 75 Pa.C.S.A. § 1731. Applying § 1711, this court has held that the MVFRL does not require the insurers of motor vehicles that are registered outside Pennsylvania to provide MVFRL first

---

**3.** Section 1711 states in pertinent part as follows: "An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, except recreational vehicles not intended for highway use, motorcycles, motor driven cycles or motorized pedalcycles or like type vehicles, registered and operated in this Commonwealth, shall include coverage providing a medical benefit in the amount of $10,000.00, in income loss benefit up to a monthly maximum of $1,000.00 up to a maximum benefit of $5,000.00 and a funeral bene-

fit in the amount of $1,500.00 ..." 75 Pa. Stat. and Cons. Stat. Ann. § 1711 (West). The Court notes that the statutory language has changed since *Pugh* but the changes only affect the maximum medical benefits amounts. Now the statute only provides for coverage providing a medical benefit in the amount of $5,000 with no income loss benefits or funeral benefits. Thus, the statutory modifications do not affect *Pugh*'s application to this case because of the language "registered and operated in this Commonwealth."

party benefits in Pennsylvania accidents. *Boone v. Stonewall Ins. Co.*, 382 Pa.Super. 104, 554 A.2d 968 (1989) (insurer of vehicle registered in Virginia need not provide medical benefits under Pennsylvania's MVFRL). See also *Jarrett v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 400 Pa.Super. 565, 584 A.2d 327 (1990) (insurer of North Carolina vehicle not required to provide MVFRL coverage); *Pugh v. Government Employees Ins. Co.*, 380 Pa.Super. 606, 552 A.2d 708 (1989) (operation of Maryland vehicle in Pennsylvania insufficient to impose requirements of MVFRL on its insurer). *Id.* at 575–76, 633 A.2d 170.

During oral argument, Defendants did not have a response to Plaintiff's argument that section 1720 and 1722 do not apply in the instant case because the insured vehicle was not registered in Pennsylvania. Defendants did not supply the Court with any supplemental briefing after oral argument to address this issue.

 The Court must review the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), § 1701 et seq., and determine if it is applicable to the instant case and thus creates a conflict between Wyoming and Pennsylvania law by precluding Plaintiff's subrogation claim. The MVFRL has two primary purposes: to reduce the escalating costs of purchasing motor vehicle coverage in the Commonwealth and to provide prompt and adequate basic loss benefits for motor vehicle accident victims. *Danko v. Erie Ins. Exchange*, 428 Pa.Super. 223, 630 A.2d 1219, 1223 (1993). After reviewing the MVFRL, the Court finds that it is a statutory scheme that governs first party automobile insurance benefits.

The policy at issue in the instant case is an occupational accident insurance policy.

Neither party briefed what type of insurance occupational accident insurance is, but the Court understands it to be an alternative or a supplement to worker's compensation coverage because it provides insurance for work related accidents. Regardless of the lack of briefing on the issue, it is clear to the Court that an occupational accident insurance policy is not automobile insurance as contemplated by the MVFRL. The Court, however, will still examine whether the anti-subrogation provision in section 1720 is broad enough to encompass the benefits paid by Plaintiff to Cunningham under the policy and preclude Plaintiffs declaratory judgment claim.

The Court's focus is on section 1720 of the MVFRL, which prohibits subrogation from a claimant's tort recovery for four types of benefits-those available under sections 1711, 1712, 1715, and 1719 of the statute. Section 1711 addresses required medical benefits, sections 1712 and 1715 address optional medical benefits, income loss benefits, accidental death benefits, funeral benefits, and extraordinary benefits, and section 1719 addresses benefits provided by a program, group contract or other arrangement, which includes benefits payable by a hospital plan corporation or a professional health service corporation.

The only types of benefits at issue in this case are medical benefits and income loss benefits. Neither party argues that the benefits paid by Plaintiff to Cunningham are those types of benefits provided by a program, group contract or other arrangement under 1719. Thus, the Court will only consider whether sections 1711 and 1712 encompass the benefits Cunningham received from Plaintiff.[4]

Defendants argue that the anti-subrogation provision contained in section 1720

---

**4.** Sections 1715 and 1712 contain identical types of benefits.

prohibits subrogation or reimbursement with respect to a claimant's tort recovery in all actions arising out of the maintenance or use of a motor vehicle. The Court, however, does not find the anti-subrogation provision to be this broad. In order for the MVFRL to be triggered, the claimant must have applied for benefits of the types governed by the MVFRL because section 1720 only bans subrogation for those types of benefits, not all insurance benefits received by every accident victim who has any type of insurance policy issued in Pennsylvania.

Both sections 1711, addressing required benefits, and 1712, addressing availability of benefits, contain the introductory language addressed in *Pugh* and *Bridges*, "[a]n insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title ..., registered and operated in this Commonwealth." The Court in *Pugh* relied on this language to find that, "[T]here are two requirements for determining an insured's entitlement to recover first party benefits: (1) the insured vehicle must be a vehicle of the type required to be registered, such as an automobile, and (2) the insured vehicle must actually be registered in the Commonwealth." The identical introductory language in sections 1711 and 1712 triggers the application of these same requirements in section 1712.

The Court finds that in order for the anti-subrogation provision in section 1720 to apply, Cunningham would have had to be an eligible claimant under the MVFRL, i.e. the insured vehicle at issue must have been registered in Pennsylvania, and he must have received benefits contemplated by section 1711 or 1712. It is undisputed in this case that the insured vehicle was registered in Illinois. Doc. 29, Exhibit G, pp. 10–11. Further, Cunningham did not apply for first party benefits under an automobile liability policy of the type governed by the MVFRL. Even if Cunningham had applied for the type of benefits governed by the MVFRL, since his vehicle was not registered in Illinois, he would not have been an eligible claimant.

The Court finds that a claimant's eligibility to bring a claim under the MVFRL is a precondition for section 1720's anti-subrogation provision to apply. The Court finds that there is no evidence before the Court that Cunningham attempted to make a claim under the MVFRL. Further, the Court finds that even he had attempted to make such a claim, he would have been an ineligible claimant because neither of the vehicles involved in the accident were registered in Pennsylvania as required by section 1711 and Defendants have not demonstrated that Cunningham received or applied for any other benefits from Plaintiff under an automobile liability policy. Thus, the Court finds that the MVFRL statutory provisions are not applicable in the instant situation and do not preclude Plaintiff's subrogation or reimbursement claims.

Accordingly, the Court finds that the MVFRL does not create a conflict between Wyoming and Pennsylvania law in this matter. When there is no conflict, the Court applies the law of the forum. *Act I, LLC v. Davis*, 2002 WY 183, ¶ 11, 60 P.3d 145, 149 (Wyo.2002). As discussed above, there is no conflict between Wyoming and Pennsylvania law. Accordingly, the Court will apply Wyoming law to the issue of whether National's underlying negligence claim brought via subrogation against Defendants Toland and Drinkwalter is destroyed by Cunningham's settlement and release. The Court cautions parties that this ruling on applicable law applies only to Plaintiff's subrogation claim, not the reimbursement claim or other issues that may arise.

**2. Are National's subrogation rights against Defendants Toland and Drinkwalter destroyed by Cunningham's settlement and release?**

Next, the Court will consider whether under Wyoming law Plaintiff s subrogation claim is destroyed by Cunningham's settlement and release with the third party tortfeasors. In its brief, National argues that the Court should take an *Erie* guess because there is no Wyoming law on point. When making the *Erie* guess, National argues that Wyoming would adopt the majority rule that a tortfeasor's settlement with the insured, with knowledge of insurer's subrogation rights, would not prevent the insurer from maintaining later a subrogation action in its own name against the tortfeasor. Plaintiff argues that all of the states in the Tenth Circuit that have addressed this issue have adopted the majority view, which bolsters the conclusion that Wyoming too would apply the majority view. Plaintiff argues that both Toland and Drinkwalter were on notice of National's subrogation claim well before they settled with Cunningham, and according to the majority rule, Plaintiff urges that its claim against Toland and Drinkwalter is not destroyed. In its oral argument, Plaintiff modified its argument. As discussed above in the conflict of law section, Plaintiff argues that the Wyoming Court already adopted the majority view in *Stilson v. Hodges,* 934 P.2d 736 (Wyo. 1997), and thus the Court need not take an *Erie* guess.

Defendants argue, without conceding that Wyoming law applies, that *Huntley,* 78 Wyo. 380, 328 P.2d 569, applies to this issue. The Court has already found above that *Huntley* is distinguishable from this situation. Next, Defendants, without conceding that Wyoming would adopt the majority rule as identified by Plaintiffs, argue that if Wyoming followed the majority rule, Wyoming would also follow the Oklahoma "made whole doctrine." Defendants describe the "made whole doctrine" as "prohibiting an insurer from recouping anything by way of subrogation or reimbursement until the insured 'has been made entirely whole through recovery of all compensatory damages to which he is entitled.' *America Medical Sec. v. Johnson,* 15 P.3d 976, 979 (Okla.Civ.2000) (citing *Sunbeam–Oster Co., Inc. Group Benefits Plan v. Whitehurst,* 102 F.3d 1368, 1372 (5th Cir.1996))." Defendants urge the settlement of a disputed claim does not mean the injured party has been "made whole" as a matter of law. It is worth noting that Defendants do not dispute that Plaintiff's defining the majority rule as it did, the application of *Stilson* to the instant case, or make any attempt to perform a separate *Erie*-guess analysis, but merely state that they do not concede that the majority rule should be adopted by the Court.

At this time, due to Plaintiff providing relevant Wyoming authority to the Court in oral argument, the Court finds that it need not take an *Erie*-guess or consider the made whole doctrine as raised by the Defendants in response Plaintiff's arguments about the destruction of Plaintiff's claims against Defendant Toland and Drinkwalter. The Court will merely apply the Wyoming law. In *Stilson,* the Wyoming Supreme Court held that "Hodges and State Farm received notice that Stilson had assigned a part of her claim against Hodges to Allstate because Allstate had paid Stilson's medical expenses. After receiving the assignment notice, Hodges and State Farm were obligated to pay Allstate's claim, and, should they fail to do so, they would risk being held liable to Allstate." *Stilson v. Hodges,* 934 P.2d 736, 738–39 (Wyo.1997).

The Court finds the Wyoming Supreme Court's statement in *Stilson* that Hodges and State Farm would risk being liable after settlement confirms that Wyoming follows the majority rule that a tortfeasor's settlement with the insured, after the tortfeasor had knowledge or notice of insurer's subrogation rights, would not prevent the insurer from later maintaining a subrogation action in its own name against the tortfeasor. In this case, it is undisputed that Plaintiff put Drinkwalter, Toland, Cunningham, their respective attorneys, and Great West Casualty on notice of its subrogation claim prior to settlement. Accordingly, the Court finds that under Wyoming law, Plaintiff's subrogation claim was not destroyed by Cunningham's settlement and release with Drinkwalter and Toland through Great West Casualty. The Court does not make any findings as to the merits of Plaintiffs negligence claim against Defendants Toland and Drinkwalter because Plaintiff made no such arguments on summary judgment.

### 3. Plaintiff's reimbursement claim and declaratory judgment claim against Defendant Cunningham

In its Motion for Summary Judgment, Plaintiff states,

National's [sic] maintains that recovery for benefits paid to and on behalf of Cunningham should be made from Defendants Toland and Drinkwalters, as at-fault third parties who settled with notice of National's subrogation rights under applicable Wyoming law. However, if this Court determines National does not have a subrogation right against Toland and Drinkwalter, National maintains a reimbursement right from Cunningham for the benefits paid pursuant to the provisions of the policy.

Because the Court has determined that under Wyoming law, National may pursue its subrogation claim against Toland and Drinkwalter, the Court will not consider National's alternative argument regarding its reimbursement claim against Cunningham. If the parties believe that they need a ruling on National's reimbursement and declaratory judgment claims, the parties shall move the Court for such a ruling. If the parties move the Court for a ruling, the Court expects the parties will submit additional briefing on the issue of whether the settlement agreement included sums of money for Cunningham's lost income and medical benefits. More specifically, the Court would like briefing on the issue of whether under Pennsylvania law, the Court, as a matter of law, can presume that a settlement includes medical expenses and lost income benefits when the settlement occurred before a Complaint was filed and is a full release, but fails to allocate the settlement amount based on types of damages.

## CONCLUSION

For the reasons discussed above, the Court concludes that Wyoming law applies to Plaintiff's subrogation claim. The Court further concludes that under Wyoming law, Plaintiff may bring claim one, a subrogation claim, against Defendants Toland and Drinkwalter. The Court does not make any conclusions as to the merits of Plaintiff's claims or regarding any genuine issues of material facts. Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment with respect to claim one as specifically limited above. Further, the Court **DENIES** Plaintiff's Motion for Summary Judgment as it relates to Plaintiff's claims two and three against Defendant Cunningham, but will revisit such arguments if specifically moved by the parties. The Court will set a status conference in the near future to discuss the

status of the case, future deadlines, and trial dates.

